**SUNNYSIDE UP CORPORATION and Kathryn Longer, Appellants,**

v.

**CITY OF LANCASTER ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1999.
Decided Oct. 20, 1999.

Melvin H. Hess, Lancaster, for appellants.

Matthew J. Creme, Jr., Lancaster, for appellee.

Before DOYLE, President Judge, PELLEGRINI, J., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Sunnyside Up Corporation and Kathryn Longer (Objectors) appeal from an order of the Court of Common Pleas of Lancaster County (trial court) affirming the Zoning Hearing Board of the City of Lancaster's (Board) decision granting a special exception to the County of Lancaster (County) to construct a "juvenile" detention facility.

The County is the owner of approximately 60 acres of land in the City of Lancaster on the northern tip of what is known as the Sunnyside Peninsula (Peninsula) because it is bordered on three sides by the Conestoga River. The Peninsula is largely undeveloped containing farmland, an abandoned quarry and a small residential community located on its southern end. Under the City of Lancaster Zoning Ordinance (Ordinance), the property is located in a "Mixed Use"[1] zoning district. On January 8, 1998, the County filed an application with the Board for a special exception[2] to construct on 13.63 acres of its 60 acres of property a facility to house up to 144 juvenile delinquents awaiting final disposition in court. Such a facility would be permitted as a special exception[3] in a "Mixed Use" zoning district if it fell within the definition of a "government facility" but would not be permitted if the facility was characterized as a "criminal detention facility." A "criminal detention facility" is defined as one that is "used for the detainment of individuals who had been arrested and are awaiting court action and/or for the incarceration of individuals assigned prison terms by the courts"[4] and is limited to the area zoned "Detention Facility."[5]

At the hearing on whether the special exception should be granted, County Engineer David McCudden (McCudden), among others,[6] testified as to the descrip-

---

1. Section 012.6 of the Ordinance provides that the "Mixed Use" district includes areas of the City characterized by residential uses in close proximity to many non-residential uses such as historic warehouses and manufacturing facilities. Section 051 of the Ordinance limits the permitted institutional uses by right in the "Mixed Use" district to ambulance services, fire or police stations, schools and temporary shelters. The institutional uses permitted by special exception include community rehabilitation facilities, half-way houses, district magistrates, membership clubs, convalescent homes and *government facilities*.

2. The County initially applied for a use variance but amended its application in order to also apply for a special exception. Eventually, it abandoned any claim that it was entitled to a use variance.

3. Section 122.5 of the Ordinance requires an application for special exception in order to place county government facilities in the "Mixed Use" district. In order to receive a special exception, that section provides that an applicant must present evidence to the Board that the application complies with all the specific requirements contained in the Ordinance and must prove that the enumerated items with the Ordinance concerning accessibility, parking, types of structures proposed, utilities, yard requirements, lighting, signs and compatibility with surrounding areas are met so that the health, safety and welfare of the neighborhood is protected.

4. Lancaster City Zoning Ordinance § 191.2.

5. Section 012.14 of the Ordinance provides that the "Detention Facility" district is designed to provide a location for criminal detention facilities and their supporting buildings. The only district so zoned is where the Lancaster County Prison is located.

6. The County also presented the testimony of David Christian, its landscape architect, as to the description of the project, and McKinley Generette, the Director of the current juvenile

tion of the proposed facility and its compatibility with surrounding uses. He stated that the facility would consist of a 100,000 square-foot one-story brick building containing 144 secured beds, 25 shelter beds, meeting rooms, educational areas, indoor recreation facilities, a gymnasium, a chapel, a parking area and a walled courtyard. He also testified that the facility would be compatible with the adjacent properties because it would resemble a school, it would not be surrounded by fences or gates, would have a buffer of vegetation to hide it from view, and would maintain the large side yard areas required in the flood plain area which would preserve the wooded area near the river. McCudden also stated that since it would be located at the northern point of the Peninsula, the facility would not be near the residential area located at its southern end. As to the proposed governmental use of the facility, McCudden opined that it was not a "criminal detention facility" as defined under the Ordinance because under Pennsylvania law, juveniles can neither be charged with crimes nor be considered criminals, but rather are charged with "delinquent acts" and are considered "delinquent."

Edward Stoudt (Stoudt), the Director of Juvenile Probation for the County of Lancaster, also testified that unlike a criminal detention facility, the proposed facility would be licensed by the Department of Public Welfare to detain juveniles who were alleged or adjudicated delinquent children under the Pennsylvania Juvenile Act pending their hearing in juvenile court and for juveniles who were awaiting placement after disposition in the courts. Also, unlike a criminal detention facility, the facility would be used to provide additional governmental services such as educational programs, therapy and shelter for juveniles who had not committed delinquent acts but required safety from abusive homes.

Objectors opposed, contending that the proposed facility was not permitted because it was a "criminal detention facility" and not a "governmental facility" as it would be used to detain individuals who had committed violent crimes and who were arrested and awaiting court action. Because the use fell within the definition of a "criminal detention facility," Objectors contend that the facility was limited to only "Detention Facility" districts and, as such, was not a permitted use in the "Mixed Use" district. Even if the proposed facility was a "governmental facility," Objectors contend that the special exception should not be granted allowing its use because its presence would have an adverse impact on surrounding properties. In support of that position, Objectors presented the testimony of a civil engineer, a landscape architect and two real estate brokers who cumulatively testified that the detention center would adversely impact the health, safety and welfare of the community because property values might decline upon the construction of a facility to house violent juveniles on the Peninsula due to apprehension of escapes from the facility and an increase in crime in the neighborhood. They also stated that the neighborhood would be adversely impacted by the facility because its presence would be incompatible with the residential and ecological nature of the community, the facility would increase traffic to the community, and its lighting would cause a "glow" at night.

Rejecting Objectors' interpretation of the Zoning Code that the proposed facility would be a "criminal detention facility" because juvenile delinquents could not be considered "criminals" under Pennsylvania law, the Board found that the juvenile detention center was a permitted use in the "Mixed Use" zoning district because it was a "government facility." Because the County had met its burden to establish

detention center for Lancaster County, who testified as to the need for a new detention

center.

that the use was permitted under the Ordinance, the Board granted the County's request for a special exception finding that Objectors failed to provide probative evidence of the harm to the community because their evidence was speculative and did not establish effects greater than that which would be incident to any of the other permitted uses in the district. Objectors appealed to the trial court which affirmed the Board based on similar findings. This appeal by Objectors followed.

## I.

As a preliminary matter, the County seeks to quash the appeal of Sunnyside Up Corporation for lack of standing because its option to purchase the quarry abutting the proposed site of the facility expired since the trial court issued its decision. It argues that because the option expired on February 19, 1999, Sunnyside Up Corporation is no longer an "aggrieved party" to the action.

■ Generally, persons having no real interest in a dispute are not considered to have standing to become parties to a proceeding, and zoning cases are no exception to this general rule. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia*, 729 A.2d 117 (Pa.Cmwlth.1999). To have standing, a party must be "aggrieved," i.e., the party must have an adverse, substantial and immediate interest in the subject matter of the litigation. *Id.* Moreover, just because a party had standing before the Board or trial court is insufficient to warrant standing to appeal a decision further if the party appealing a determination is no longer "aggrieved." *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998).

■ In the present case, when Sunnyside Up Corporation's equity interest in the adjoining property, the only basis for its standing, expired, it no longer was an "aggrieved party" to the action and, consequently, no longer has standing to maintain this appeal and its appeal must be quashed. Nonetheless, even though Sunnyside Up Corporation's appeal is quashed, we still must address the merits because the remaining party to this appeal, Kathryn Longer, continues to be a resident in close proximity of the proposed use and, as such, is still an "aggrieved party" having standing to appeal the trial court's decision. *Miller v. Upper Allen Township Zoning Hearing Board*, 112 Pa.Cmwlth. 274, 535 A.2d 1195 (1987) (property owners in close proximity to proposed use have standing to appeal zoning hearing board decisions).

## II.

■ As to the merits, as she did before the trial court, Objector Longer contends that the Board erred in finding that the proposed use as a juvenile detention center did not fall within the Ordinance's definition of a "criminal detention center." In determining whether the definition of a "criminal detention facility" under the Ordinance applies to facilities detaining juveniles, because zoning restrictions are in derogation of property rights, where a term in a zoning ordinance is undefined, an ambiguity in that term must be construed in favor of the use proposed by the property owner.[7] *Nether Providence Township v. R.L. Fatscher Associates, Inc.*, 674 A.2d 749 (Pa.Cmwlth.1996). When determining the meaning of an undefined term, it is appropriate to construe a given word or phrase with regard to context and, where possible, bring the terms of the ordinance together. *Borough of Pleasant Hills v. Zoning Board of Adjustment of the Bor-*

7. The issue of whether a proposed use falls within a particular category in a zoning ordinance is a question of law. *Eastern Consolidation and Distribution Services, Inc. v. Board*

*of Commissioners of Hampden Township*, 701 A.2d 621 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 553 Pa. 683, 717 A.2d 535 (1998).

*ough of Pleasant Hills,* 669 A.2d 428 (Pa. Cmwlth.1995).

■ Objector Longer contends that because the definition of "criminal detention center" in the Ordinance makes no reference to limiting its application to only criminals and, instead, concerns the penal and corrective nature of the facility, and the facility at issue here will be used to detain individuals who have been arrested and are awaiting court action, the Board and the trial court erred in finding that it was not a "criminal detention facility." In response, the County contends that because juvenile delinquents cannot be considered "criminal" under Pennsylvania law, the facility will not serve as a place of incarceration of adults charged with crimes, and the only area indicated in the Ordinance as a detention facility area is where the Lancaster Prison is located, the proposed use cannot be considered a "criminal detention facility."

While the definition of the term "criminal detention facility" makes no reference to criminals, the use of the term as a descriptor of the types of individuals who require segregation into a separate district and the designation of the "detention facility" to only the area in which the Lancaster Prison is located indicates that a criminal detention facility houses criminals. The term "criminal" is not defined in the Ordinance, and when that occurs, Section 191 of the Ordinance indicates that Webster's Dictionary should be utilized to provide a

meaning. Among other meanings, it defines "criminal" as one "who has committed a crime."[8] Because the term "criminal" is not defined in the Ordinance and the dictionary definition is circular, we turn to statutory sources to determine whether juveniles can be considered "criminals" or one "who has committed a crime" under the laws of the Commonwealth.[9]

Since 1933, when a separate court was established with exclusive jurisdiction over juveniles, the Commonwealth has created a system in which juveniles cannot be considered to have committed a crime and are treated differently from criminals. *See Pennsylvania v. Baker,* 531 Pa. 541, 614 A.2d 663 (1992). In that year, the Commonwealth enacted the precursor to the Juvenile Act (Act),[10] which by its modern terms expressly provides that an adjudication under its provisions "is not a conviction of crime."[11] *Id;* 42 Pa.C.S. § 6354(a). Rather, under the Act, youths who are detained in facilities such as the one proposed are alleged to have committed or have committed a "delinquent act" and, as a consequence, are considered "juvenile delinquents" and not "criminals." *See* 42 Pa.C.S. § 6302. Also, unlike individuals who are alleged to have committed crimes, juvenile delinquents are not permitted to be housed in a criminal facility unless they are certified as adults based on the severity of the crime for which they have been detained.[12] *See* 42 Pa.C.S. § 6327. Final-

**8.** WEBSTER'S NINTH COLLEGIATE DICTIONARY 307 (9th ed.1989). While Section 191.2 specifically states that Webster's Unabridged Dictionary should be used to provide needed definitions, since that specific dictionary is no longer published, the Ninth Collegiate Dictionary is utilized throughout this decision to define terms.

**9.** Where a zoning ordinance does not define a term, that term must be given its usual and ordinary meaning; if a court needs to define a term in a zoning ordinance, it may consult the definition found in statutes, regulations or dictionaries for guidance. *Nether Providence Township.*

**10.** Act of June 27, 1978, P.L. 586, *as amended,* 42 Pa.C.S. §§ 6301–64.

**11.** Under the original version of the Act, Section 19 provided that no child could be "deemed to be a criminal by reason of any [order of juvenile court] or be deemed to have been convicted of a crime." *Baker,* 531 Pa. at 565, 614 A.2d at 675.

**12.** There are further statutory indications that the Commonwealth differentiates between juvenile delinquents and criminals. Upon admission into the juvenile system, there are specific rules which protect the records of juveniles, *see* 42 Pa.C.S. § 6308, and a "criminal history record information" does not in-

ly, the facilities used to detain juveniles are part of an entirely separate system from that of criminal detention facilities, falling under the administration of the Juvenile Court, *see* 42 Pa.C.S. § 6301 *et. seq.*, and licensed by the Department of Welfare and not under the jurisdiction of either the Pennsylvania Bureau of Corrections, *see* 61 P.S. § 1051, 37 Pa.Code § 93.1, or the County Prison Board. *See* 61 P.S.C.A. § 407 *et. seq.* Because juveniles cannot be considered "criminals" as indicated by the case law and statutory scheme of the Commonwealth, the Board and the trial court did not err in concluding that the proposed use as a "juvenile" detention facility was not a "criminal" detention facility limited only to the detention facility district, and because it is owned and operated by the County, that it was a "government facility" permitted as a special exception within the "Mixed Use" district.[13]

 Even if the facility is found to be a "government facility," Objector Longer contends that the trial court erred in affirming the Board's grant of a special exception because in addition to proving that the enumerated requirements for a special exception are satisfied, the County failed to establish that the proposed use would not be detrimental to the health, safety and welfare of the community.[14] Contrary to the assertion that the County has an additional burden, however, once the applicant for a special exception has met the burden of persuading a zoning hearing board that the proposed use satisfies the objective requirements of the ordi-

nance, this Court has stated that a presumption arises that the proposed use is consistent with the health, safety and general welfare of the community. *Manor Healthcare v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). The burden then shifts to the objectors to rebut that presumption by proving to the zoning hearing board that to "a high degree of probability that the proposed use will substantially affect the health, safety and welfare of the community" greater than what is normally expected from that type of use and not just speculation of possible harms. *Tuckfelt v. Zoning Board of Adjustment of Pittsburgh*, 80 Pa.Cmwlth. 496, 471 A.2d 1311, 1314 (1984).

 In this case, relying on the testimony of the County's witnesses that the facility would resemble a school, be screened from view, show no outwardly visible security protections and be located at a distance from the residential area, all measures which would make this use similar with other uses permitted in the zone such as schools or shelters, the Board did not err in rejecting Objectors' contention that the proposed use would be more detrimental to the community than other permitted uses. The Board also did not err in rejecting Objectors' evidence concerning the facility's detrimental affect on the ecological nature of the Peninsula, alteration of the residential character of the Peninsula, increased traffic and the "glow" of the facility at night, which also would occur by the construction of other permitted institu-

---

clude a record of juvenile delinquency. *See* 55 Pa.Code § 3680.34; 18 Pa.C.S. § 9105. Additionally, upon admission into a detention facility, unlike a criminal, a juvenile cannot be photographed or fingerprinted. *See* 55 Pa.Code § 3680.32; 18 Pa.C.S. § 9105. Finally, juvenile hearings are conducted in a manner which is distinguishable from criminal trial procedures, and the dispositions of the two types of cases are treated differently. *See* 42 Pa.C.S. §§ 6336, 6340, 6341.

13. While the term "government" facility is not defined in the Ordinance, the dictionary definition of the term indicates that it means

"the office, authority or function of governing." Webster's Ninth Collegiate Dictionary 529 (9th ed.1989).

14. A special exception is not an exception to the zoning ordinance, but is rather a permitted use to which the applicant is entitled unless the Board determines that according to the standards set forth in the ordinance, the proposed use would adversely affect the community. *East Manchester Township Zoning Hearing Board v. Dallmeyer*, 147 Pa.Cmwlth. 671, 609 A.2d 604 (1992).

tional uses in the district. Finally, while Objectors' witnesses testified that property values might decrease due to the presence of a juvenile detention center increasing the fear of crime on the Peninsula, that testimony is not persuasive for several reasons: first, the testimony was mere speculation of a reaction which fell short of the "high degree of probability" of a substantial affect on the community required, especially where the measures utilized by the County will ensure the facility is compatible with the residential nature of the community; and second, if a decrease in property values does occur, it would be no different than that usually associated with the construction of a community rehabilitation facility or half-way house, both of which are permitted uses in the "Mixed Use" zoning district.

Accordingly, the appeal of Sunnyside Up Corporation is quashed, and because the facility will be used to detain juveniles and not "criminals" and it is a "government facility" which will not adversely affect the surrounding neighborhood, the trial court's holding that the Board properly granted a special exception to the County to build a juvenile detention facility is affirmed.

### ORDER

AND NOW, this 20 th day of October, 1999, the appeal of Sunnyside Up Corporation is quashed and the order of the Court of Common Pleas of Lancaster County dated February 3, 1999, is affirmed.