# DeAngelo v. Stroud Township Zoning Hearing Board

C.P. of Monroe County, No. 96 CV 2014

*Aaron M. DeAngelo*, for appellant.
*Joseph P. McDonald*, for appellee.
*Richard E. Deetz* and *Christie E. Bower*, for intervenors.

ZULICK, *J.*, Sept. 11, 2014—This matter comes before the court on the appeal of Susan C. DeAngelo from the December 13, 2013 decision of the Stroud Township Zoning Hearing Board granting the Township of Stroud and Stroudsburg Wesleyan Church (Church) an approval as a special exception of a seasonal homeless shelter in the existing church gymnasium.

"The real estate in question is located in the C-1 zoning district.... The two properties contain approximately 2.75 acres, improved with a Church sanctuary and a

9,300 square foot (1st floor) addition for classrooms, multipurpose room and recreation space [,] including the gymnasium in question in this hearing." ZHB Decision at 2. The church proposed a seasonal homeless shelter to take place in the existing church gymnasium during the months of November through March. *Id.* at 4. The gymnasium would house 18 people on temporary beds, divided by gender and families, from 10:00 p.m. until 5:45 a.m. Beds and dividing walls would be removed by 6 a.m. to prepare the gymnasium for the church's daytime programs. *Id.* at 4, 15. The church additionally proposed a small outdoor smoking area for the participants. Hearing transcript (Sept. 4, 2013) at 17-18. This area is planned to be landscaped by a local Boy Scout troop so as to be further concealed from public view when in use. *Id.*, at 50-51.

The church is a lawful, nonconforming use in the C-1 zoning district. The church requested a special exception use, an expansion of the nonconforming use, or, alternatively, an accessory use from the Stroud Township Zoning Hearing Board (ZHB) that would allow church members to establish the desired homeless shelter.

Susan DeAngelo, a neighborhood resident, opposed the shelter and was granted party status. Hearings on the requested special exception use were held on September 4, October 2, and November 6, 2013, which all parties attended and evidence was taken in the form of testimony and exhibits.

On December 13, 2013, the ZHB rendered its decision, granting the special exception, and, alternatively, the accessory use, and the expansion of the lawful, nonconforming use. The ZHB justified its decision by stating that "A homeless shelter is not defined in the

zoning ordinance; however, the services offered through the homeless shelter are consistent with other defined uses permitted under use class 83, Social Services." ZHB Decision at 20. The ZHB determined that the Church met its burden regarding the special exception use, and that the objectors did not provide persuasive evidence to establish that the homeless shelter would adversely affect the health, safety, and welfare of the community, or the community residents' property values. Alternatively, the ZHB determined that the homeless shelter is a permitted accessory use to the principal use of the Church. And finally the ZHB determined that "The proposed homeless shelter is a reasonable alteration or extension of a lawful nonconforming use...", *Id.* at 21.

Ms. DeAngelo appealed the ZHB's decision, asserting that "the finding of the homeless shelter as an accessory use is contrary to the law and facts as presented;" that "Applicant... failed to carry its burden with regard to the special exception conditions, including but not limited to the impact on the surrounding neighborhood;" that a board member was excluded without cause in favor of an alternative which had a significant effect on the 2-1 decision; and that the "conditions that were proposed by the Township Engineer were [improperly] ignored[.]" Appellant's brief pp. 2-3. Appellees ZHB and church contend that the ZHB properly decided the case based on the facts and the law; that the alternate board member was substituted for good cause, consistent with the Municipalities Planning Code; and that the township engineer's conditions were suggestions and not binding. All parties submitted briefs in support of their respective positions. A hearing was held on July 7, 2014, at which all parties argued their positions, and no new evidence was taken.

## DISCUSSION

"In reviewing the decision of a zoning hearing board where the trial court has not taken any additional evidence, as occurred here, our review... is limited to determining whether the board abused its discretion or committed a legal error." *Smalley v. Zoning Hearing Bd. of Middletown Tp.*, 834 A.2d 535, 538 (Pa. 2003). "An abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence. By substantial evidence we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Valley View Civic Ass'n. v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983)). "It is well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court." *Lancaster Twp. v. Zoning Hearing Bd. of Lancaster Twp.*, 6 A.3d 1032, 1034 (citations omitted). This judicial deference results from the knowledge and expertise a zoning board has in interpreting the ordinance it administers. *Id.*

### SPECIAL EXCEPTION USE

A special exception use under a zoning ordinance is a "conditionally permitted use, legislatively allowed if the standards are met." *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 911 (1980). "A special exception is not an exception to the zoning ordinance, but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community." *Johnson v. North Strabane Township*, 546 A.2d 1334 (1988); *A.J. Groseck & Associates v. Zoning Hearing Board of Montrose Borough*, 450 A.2d 263 (1982). The use must comply with the enumerated uses in the ordinance. *Manor Healthcare*

*Corp. v. Lower Moreland Township Zoning Hearing Board*, 590 A.2d 206, 215 (1991). The Municipalities Planning Code states:

> "Where the governing body, in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria. In granting a special exception, the board may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance."

53 P.S. § 10912.1.

The church is located in Zoning District C-1, a residential and commercial district. The ZHB analyzed the special use exception as belonging to the permitted social services exception detailed in the ordinance. ZHB decision at 11. The special exception requirements under article 4.800 are as follows:

> "4.821: Shall not cause substantial injury to the value of other property where it is to be located.
>
> 4.822: Shall conform with regulations applicable to the district where located or shall conform to the more specific standards listed in article V of this ordinance, and shall conform to the intent of the district,
>
> 4.823: Shall be compatible with adjoining development,
>
> 4.824: Shall provide adequate landscaping and screening to protect and enhance adjoining areas. Adequate landscaping and screening may include a

landscaped buffer yard(s) and buffer strip(s) as defined by section 6.200 and section 6.300 as deemed necessary by the Zoning Hearing Board.

4.825: Shall provide off-street parking and loading and access in keeping with this ordinance so as to minimize interference with traffic on the local streets.

4.826: Shall not jeopardize the public health, safety, welfare, and convenience.

4.827: Such Special Exceptions which are authorized by the board may be subject to any additional conditions and safeguards established by the Zoning Hearing Board in each case which may be warranted by the character of the areas in which such cases are proposed or by other special factors and which are necessary to implement the purposes of this ordinance."

The ZHB granted the special exception use as falling under the non-residential and non-commercial exceptions enumerated in the ordinance. The ordinance contains non-exclusive language, including subheadings for "Residential Care" and the undefined term, "Social Services, not elsewhere classified." ZHB decision at 13. The zoning ordinance also contains the definitions for "Residential Care facility," and "Personal Care Home/' both of which allow social services, including "24 hour care" to unrelated adults as a social services use of a C-1 property. *Id.* At 13-14.

These permitted uses are indeed more "intense" than the proposed seasonal, overnight homeless shelter at the church. The ZHB cites Zoning Ordinance § 1.152 *Interpretation Standards*, which provides that "any list of permitted or prohibited uses shall not be deemed to be

an exhaustive list, but rather is for the purposes of clarity and emphasis and to illustrate uses which are desirable, be they permitted, special or conditional uses." "Permissive terms in zoning ordinance must be construed expansively, so as to afford the landowner the broadest possible use and enjoyment of his land.... Conversely, "[R]estrictions on a property owner's right to free use of his property must be strictly construed and all doubts resolved in his favor." *Manor Healthcare*, 590 A.2d at 69. The ZHB appropriately interpreted the category "Social Services" broadly to include a temporary, seasonal homeless shelter as a special exception use of the church. Thus, if the church has met the standards in the ordinance, its proposed use will comply with the Social Services exception.

Ms. DeAngelo argues that the ZHB inappropriately applied the burden of proof in this type of special exception use case. Ms. DeAngelo contends that the church has the burden of production and persuasion to ensure that the proposed use will not harm the health, safety, and general welfare of the community. Ms. DeAngelo further states that this burden was not met, as the church did not provide adequate assurance that this use will not harm the community. Appellant's brief at 7-14. However, she is mistaken on this point. The decision in *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board* defines the burdens of "proof" in special exception use cases. *Manor Healthcare*, 590 A.2d at 70. Ms. DeAngelo is correct in stating that the burdens of persuasion and production begin with the church. However, the church does not have the burden to prove that the proposed use will *not* harm the community; rather, the church has a positive burden to demonstrate that the special exception use will comply with the ordinance. *Id.* at 70. After that, the

burden of production regarding the special exception use's detriment to the health, safety, welfare of the community shifts to the objectors, while the burden of *persuasion* remains with the applicant. *Id.*; *Bray*, 410 A.2d at 911; *Greaton Properties v. Lower Merion Township*, 796 A.2d 1038, 1045 (2002). *Greaton Properties* is the most recent case detailing the requirements for a special exception use, and it states, "Objectors still retain the initial presentation burden with respect to the general matter of the detriment to health, safety and general welfare. The evidence presented by objectors must show a high probability that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a substantial threat to the health and safety of the community." *Greaton Properties*, 796 A.2d at 1045.

Here, the ZHB properly applied the burden of proof, although it did not detail the process explicitly in its decision. The church demonstrated that a landscaping project will block the smoking area from view, although this area is already secluded. Hearing transcript (Sept. 4, 2013) at 50-52. *See* exhibit A-5. The church demonstrated it had more than adequate parking—87 spaces available for an 18 bed shelter, and it is unlikely that many of the participants will drive vehicles. Hearing transcript (Sept. 4, 2013) at 20. *See* exhibit A-4. The requirements in 4.822 and 4.823 that the use conform to regulations and that the use be compatible with the adjoining development are addressed by the broadly interpreted Social Services exception.

The only special exception use requirement that the church does not explicitly meet through testimony is 4.821, "Shall not cause substantial injury to the value of other property where it is to be located." Ms. DeAngelo asserts that "The Applicant failed to present expert,

anecdotal or factual testimony regarding this prong, and their case should fail for that reason." Appellant's brief at 9. Ms. DeAngelo cited the church's attempt to contact realtors for appraisals; the realtors would not answer definitively whether the property values would decrease. *Id.* at 5. However, nothing in the zoning ordinance states that, though the applicant bears in the burden on this issue, the applicant must prove this point through appraisal testimony. During the September 4, 2013 hearing, Pastor Antal testified about the church's efforts to make the homeless project as discreet as possible. The testimony does not address these property value concerns in a systematic fashion; however, the pastor emphasized that the outside area was already hidden from view and efforts would be made to make the area even more private. The pastor went on to describe how the participants will arrive by 10 p.m., lights out will occur at 12 a.m., and the participants will be woken at 5:45 a.m. Hearing transcript (Sept. 4, 2013) at 18-20. By 6:00 a.m., the participants will be out of the building and the building will be cleaned up. *Id.* The church will provide transportation downtown to those who need it. *Id.*

Similar assurances satisfied the court in *Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Board,* in which the proposed juvenile delinquent housing would resemble a school and would be screened from view, among other things. *Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Board,* 739 A.2d 644, 650-51 (1999). The court stated, after the Applicant County had met its burden, "the [objecting] testimony was mere speculation of a reaction which fell short of the "high degree of probability" of a substantial affect (sic) on the community required, especially where the measures utilized by the County will

ensure the facility is compatible with the residential nature of the community." *Id.* at 651.

The evidence presented by the church supported the ZHB finding that the special exception use will not cause substantial injury to the value of other property where it is to be located as described in 4.821. The church's plans indicate that the homeless shelter use will primarily occur within the existing walls of the church. Although smoking will be permitted outside, the church made plans to make smokers there as unobtrusive as possible. The rest of the special exception activity will be conducted inside. There is nothing planned to cause a gathering of the homeless outside the facility other than ingress and egress.

Ms. DeAngelo additionally asserts that there are 133 homeless people in Monroe County; thus, over 100 people will be turned away each night. The use of this number is misleading because not every homeless person in the county is likely to seek this shelter on a nightly basis, but even if it is true, there is nothing about the church's proposed use to suggest that the unsuccessful visitors will remain in the area of the church or become a disruption to the neighborhood when they are turned away. Also, the homeless population is transient, and its numbers are not stable. This argument is extreme; the church has addressed the issues it has foreseen in a practical matter, and the number of homeless seeking shelter may indeed be greater at times than the church can accommodate. An applicant for a special exception use is not required to address every possible outcome of their proposed use, no matter how unlikely. The church had the burden of addressing each requirement of 4.800, and it did so through testimony and the various exhibits. The church has met the objective requirements for a special exception use and has also met

its initial burden that the church's proposed use is not detrimental to the health, safety, and general welfare of the community. *Manor Healthcare*, 590 A.2d at 216.

The burden of production then shifts to the objectors to demonstrate to a "high probability" that there will be a detriment to the health, safety, and welfare of the community, greater than the use would normally entail. The community residents merely expressed a fear of increased traffic in the area and a distaste for the church's existing programs. The church's existing programs are not under review. The residents did not provide evidence beyond speculation that something similar would occur as a result of this program. Furthermore, the residents provided no evidence of their own regarding the potential decrease in property value, Even if the community members had provided evidence of increased "wandering" or a decrease in property value, again, it would have to be more substantial than the usual effects associated with this kind of special exception use, and that is not apparent from the residents' testimony. *Sunnyside Up Corp,*, 739 A.2d at 651. Additionally, the mere existence of "aberrated" people in the area is not sufficient. *Appeal of Fleming*, 405 A.2d 1309, 1310 (1979). Thus, the ZHB was correct in determining the objectors failed to meet their burden, as the objectors did in fact have the burden of production here. The ZHB properly found that a special exception use exists pursuant to the evidence presented.

ACCESSORY USE

Ms. DeAngelo also asserts that a homeless shelter is not an accessory use incidental to the principal use of a church. An accessory use is defined as a use that is "customarily incidental" to the main, permitted use under

the ordinance. *Benoff v. Zoning Board of Adjustment*, 479 A.2d 68, 70 (1984). The ZHB found that the proposed homeless shelter was permitted as an accessory use to the church, in addition to being a proper special exception use. Ms. DeAngelo argues that a homeless shelter has no religious significance or connection to the principal use of the building as a place of worship. Appellant's brief at 4-5. Furthermore she argues that allowing such an accessory use would allow all religious institutions to perform any manner of activities on their property. *Id.*

The evidence does not support this argument. While other religious institutions in the neighborhood may not run similar programs, small, temporary homeless shelters are often housed in churches, as demonstrated by the church's witness from the Diocese of scranton. Hearing transcript (Oct. 2, 2013) at 6-12. This is what is meant by customary use — it does not necessarily have to exist in every institution of its kind, nor does necessarily it have to be a frequent use. *Aldridge v. Jackson Township*, 983 A.2d 247, 255 (2009). The ZHB must examine several factors, including "the applicant's particular circumstances, the zoning ordinance and the indications therein as to the governing body's intent regarding the intensity of land use appropriate to the particular district, as well as the surrounding land conditions and any other relevant information, including general experience and common understanding, to reach a logical conclusion as to whether a reasonable person could consider the use in question to be customarily incidental." *Aldridge*, 983 A.2d at 255-56. Because of the incidental nature of accessory uses, the use in question does not have to be directly related to worship. The ZHB appears to have addressed these issues and properly found the church's proposed homeless shelter to

be an accessory use.

## ALTERNATE BOARD MEMBER

As stated in the appellees' brief, the Municipalities Planning Code, 53 P.S. 10906 addresses the organization of the board:

> "(B) the chairman of the board may designate alternate members of the board to replace any absent or disqualified member, and if, by reason of absence or disqualification of a member, a quorum is not reached, the chairman of the board shall designate as many alternate members of the board to sit on the board as may be needed to reach a quorum. Any alternate member of the board shall continue to serve on the board in all proceedings involving the matter or case for which the alternate was initially appointed until the board has made a final decision on the matter or case..."

53 P.S. § 10906(b).

Mr. Barcafer, the replacement board member, was present at all hearings as one of two alternate board members. The board member that did not vote, Keith Drozal, was not present at the October 2 hearing, during which many witnesses testified. The Code does not define "disqualified member," but pursuant to the language and context of 53 P.S. §10906, the ZHB properly appointed Mr. Barcafer as a voting replacement in the quorum when Mr. Drozal was absent from an important hearing. Allowing Mr. Drozal to vote in the decision would have been harmful to the parties, as he had not personally heard much of the witness testimony. The MPC requires the alternate to continue to serve "until the board has made a final decision." Since that is what happened here, the ZHB

acted appropriately.

## TOWNSHIP ENGINEER'S CONDITIONS

Finally, Ms. DeAngelo argues that the church did not properly adhere to the conditions in the township engineer's letter. Ms. DeAngelo's brief cites the decision in *Edgmont Township v. Springton Lake Montessori School, Inc*, 622 A.2d 418 (Pa. Cmwlth. 1993) to support this argument, but Ms. DeAngelo has mistaken the context of the *Edgmont* decision. The decision refers to a conditional special exception use, stating, "we overturned the grant of a special exception where the plan submitted to the Board did not comply with the on-site parking requirement necessary to obtain a special exception even though the *grant of the special exception was conditioned* on the applicant obtaining off-site parking." *Edgmont Township v. Springton Lake Montessori School, Inc.*, 622 A.2d 418, 420 (1993) (referring to *Lafayette College v. Zoning Hearing Board of the City of Easton*, 588 A.2d 1323 (1991)). Here, the ZHB's grant of the special exception was not conditioned on anything; the ZHB determined that the church had met the requirements for a special exception and granted the use. The *Edgmont* decision does not refer to the recommendations of the township engineer. The school in *Edgmont* was not in compliance with the ordinance upon receiving the special exception use but promised it would be in compliance within an ascertained time period. *Edgmont*, 622 A.2d at 419. This is not analogous to the case at hand, as the ZHB found the church to be in compliance with the ordinance at the time of the special exception use request, thus meeting its burden. While the church proposed additional landscaping and safety precautions, the ZHB decision granted the special exception use because it met the requirements

of the ordinance. Because the recommendations of the township engineer appear to be just that, rather than binding requirements, this court will affirm the ZHB's grant of a special exception use without condition.

## ORDER

And now, this 11th day of September, 2014, following consideration of the parties' briefs and arguments, it is ordered that:

1. The decision of the Stroud Township Zoning Hearing Board is affirmed.

2. The appeal of Susan DeAngelo is denied.