IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dale Levy,                          :
                    Appellant      :
                                    :
           v.                       :
                                    :
Zoning Board of Adjustment          :    No. 1205 C.D. 2020
of the City of Philadelphia         :    Submitted: March 18, 2022


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: July 15, 2022


          Dale Levy (Levy) appeals from the Philadelphia County Common
Pleas Court's (trial court) October 16, 2020 order affirming the City of Philadelphia
(City) Zoning Board of Adjustment's (ZBA) decision that granted use and
dimensional variances to create two lots from one existing lot at 2034-2036 Pine
Street (Property), and for the erection of a single-family home on one of the newly
created lots.  Levy presents one issue for this Court's review: whether Fitler Square
Equities, LLC (Applicant) established the requisite hardship, pursuant to the
Philadelphia Zoning Code (Zoning Code)[1] and Pennsylvania decisional law, to
provide a legal basis for the ZBA to issue the use variance.  After review, this Court
affirms.

          The Property is a 3,328-square-foot, mid-block lot that fronts on Pine
Street and extends to Waverly Street.  It is improved with an existing three-story,

---

[1] Phila., Pa., Zoning Code (2012), https://codelibrary.amlegal.com/codes/philadelphia (last visited July 14, 2022).

multi-family (six-unit) dwelling facing Pine Street. The rear of the lot, at its Waverly Street side, holds nine accessory, open-air parking spaces. The Property is zoned RM-1 Residential. On May 28, 2018, Applicant applied to the City's Department of Licenses and Inspections (L&I) for a Zoning/Use Registration Permit for the Property. Applicant proposed to create two lots from one existing lot -- Parcel A (a 1,555-square-foot lot fronting on Pine Street), and Parcel B (a 1,773-square-foot lot fronting on Waverly Street), and construction of a four-story, single-family home with roof and rear decks and three accessory interior parking spaces on Parcel B with no change to the existing, multi-family dwelling on Parcel A.

L&I determined that Applicant's proposal failed to comply with the Property's RM-1 Residential zoning classification requirements in the following respects: (1) the proposed single-family home would be 44 feet in height, when a maximum height of 38 feet is permitted; (2) the proposed 3-car garage would be accessed from Waverly Street, the front street for Parcel B, where parking is prohibited unless accessed from a shared driveway, alley, or rear street; (3) proposed Parcel A would include 22% open area when a minimum of 25% open area is required; and (4) Parcel A's proposed rear yard would be 4 feet 7 inches deep when a minimum depth of 9 feet is required. Accordingly, L&I issued a Notice of Refusal (Refusal) on June 5, 2018.

Applicant appealed from L&I's Refusal to the ZBA on June 25, 2018. In its Application for Appeal, Applicant contended that strict compliance with the Zoning Code created an unnecessary hardship due to the limited space and physical dimensions of the Property, and it seeks only minimal modification of the Zoning Code. Prior to appearing before the ZBA, Applicant attended two public meetings with the Center City Residents' Association (CCRA), the area's Registered Community Organization, and met with neighbors.

Following the August 28, 2018 meeting, CCRA's Zoning Committee voted to oppose Applicant's requested variances. Based on community input at these public meetings, Applicant revised its proposal to satisfy the open-area requirement for Parcel A. Applicant also increased the proposed rear-yard depth from four feet, seven inches to six feet, seven inches (to be closer to the Zoning Code's nine-foot minimum requirement). Applicant also decreased the proposed structure's height from 44 feet to 42 feet (to be closer to the Zoning Code's maximum allowed 38-foot height). Finally, Applicant decreased the proposed interior parking garage from three cars to two. As a result of these revisions, L&I issued an updated Notice of Refusal that included one use and two dimensional zoning refusals, which Applicant received the morning of the hearing and submitted to the ZBA and CCRA counsel at the hearing. The updated Notice of Refusal specified that Applicant's proposed development of Parcel B still exceeded the maximum structure height permitted, the accessory parking use was still prohibited in the RM-1 Residential zoning district, and Parcel A still did not meet the minimum rear-yard depth requirement.

On September 12, 2018, the ZBA held a hearing and, at its conclusion, voted unanimously to grant the appeal with provisos restricting the maximum structure height to 38 feet (thus negating the need for a variance) and the maximum interior parking garage to 2 cars. Levy appealed to the trial court. The trial court heard oral argument on December 18, 2019. On October 16, 2020, the trial court affirmed the ZBA's decision. On November 12, 2020, Levy appealed to this Court.[2]

---

[2] "Where, as here, the trial court does not take additional evidence, this Court's review determines whether the [ZBA] committed an abuse of discretion or an error of law. An abuse of discretion will be found where the [ZBA's] findings of fact are not supported by substantial evidence." *Frederick v. Allegheny Twp. Zoning Hearing Bd.*, 196 A.3d 677, 686 n.13 (Pa. Cmwlth. 2018) (citation omitted).

On November 17, 2020, the trial court directed Levy to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Levy filed her Rule 1925(b) Statement on December 8, 2020. On January 6, 2021, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).

Preliminarily, Intervenor Center City Development, LLC (CCD)[3] asserts that Levy's brief should be stricken for failure to comply with the Pennsylvania Rules of Appellate Procedure.[4] Specifically, CCD contends that because Levy's brief contains only two citations to the record, it violates Rules 2117(a)(4) and 2132(a). CCD further argues that, because this Court previously directed Levy to file an amended brief and a Reproduced Record that conforms to the requirements of Chapters 1 and 21 of the Rules "or this case will be dismissed as of course[,]" this Court should dismiss Levy's appeal for noncompliance. May 26, 2021 Order.

Rule 2117(a) provides, in relevant part:

**General rule.** The statement of the case shall contain, in the following order:

. . . .

(4) A closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found. *See* Rule 2132 (references in briefs to the record).

---

[3] CCD is the Property's equitable owner. By September 14, 2021 Order, this Court precluded the City from filing a brief for failure to file a brief pursuant to this Court's August 3, 2021 Order.

[4] Levy did not file a reply brief in response to this assertion.

Pa.R.A.P. 2117(a).  Rule 2132(a) states:

> **General rule.**  References in the briefs to parts of the record appearing in a reproduced record filed with the brief of the appellant (*see* Rule 2154(b) (large records)) shall be to the pages in the reproduced record where those parts appear, e.g.: "(R. 26a)".  If the record is reproduced after the briefs are served in advance typewritten or page proof form (*see* Rule 2185(c) (definitive copies)), the brief may also contain references to the pages of the parts of the original record, e.g.: "(Tr. 279-280; R. 26a-27a)".

Pa.R.A.P. 2132(a).

This Court issued the May 26, 2021 Order because the lettering in Levy's original brief was smaller than 14-point, and she failed to file a Reproduced Record that was due on or before April 28, 2021.  Levy filed an amended brief on June 9, 2021, with the correct font, and a Reproduced Record on June 10, 2021.  Therefore, because Levy complied with this Court's Order, dismissal of her appeal is not warranted.  Concerning Levy's failure to cite to the record, "[a] review of [Levy's] brief reveals that[,] although not in compliance with the Rules, it nevertheless permits meaningful appellate review.  Thus, [this Court] shall discuss the merits of [Levy's] arguments." *Borough of Riegelsville v. Miller*, 639 A.2d 1258, 1261 n.3 (Pa. Cmwlth. 1994).

Levy first argues that Applicant did not establish the requisite hardship for a use variance to include accessory parking with its construction of a single-family home on Parcel B.[5]  CCD rejoins that the hardship lies in the fact that the project that is most consistent with the character of the neighborhood, most feasible, and also most beneficial for the community, is also the project that requires Applicant to give up all of its parking on a street that has no on-street parking.

---

[5] Although Section 14-303(8)(e)(.1)(.a)-(.h) of the Zoning Code, Zoning Code §14-303(8)(e)(.1)(.a)-(.h), sets forth the general criteria necessary to obtain a dimensional or use variance, Levy specifically challenges the unnecessary hardship required for the use variance granted herein.  *See* Section 14-303(8)(e)(.2) of the Zoning Code, Zoning Code §14-303(8)(e)(.2).

5

Section 14-303(8)(e)(.2) of the Zoning Code provides:

**Use Variances.**

To find an unnecessary hardship in the case of a use variance, the [ZBA] must make all of the following findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Zoning Code §14-303(8)(e)(.2).

Concerning hardship, the Pennsylvania Supreme Court has held:

[A] zoning board's discretion is "not so circumscribed as to require a property owner to reconstruct a building to a conforming use regardless of the financial burden that would be incident thereto[, e]specially . . . where the change sought is from one nonconforming use to another more desirable nonconforming use that will not adversely affect but better the neighborhood."

6

*Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014) (quoting *O'Neill v. Phila. Zoning Bd. of Adjustment*, 120 A.2d 901, 904 (Pa. 1956)). "It is the function of the zoning board to determine whether the evidence satisfies the criteria for granting a variance." *Id*. at 331. "We may conclude that the zoning board abused its discretion only if its findings are not supported by substantial evidence, which we have defined as 'relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached.'" *Id*. (quoting *Twp. of Exeter v. Zoning Hearing Bd*., 962 A.2d 653, 659 (Pa. 2009)). "An appellate court errs when it substitutes its judgment on the merits for that of a zoning board." *Id*.

> The ZBA made the following relevant Findings of Fact:[6]
>
> 11. [Katherine] Missimer[, Esquire, (Missimer) on behalf of CCD] began by noting that **the Property is zoned as RM-1 Residential Multi-Family District**, and includes an existing multi[-]family[] structure fronting on Pine Street and nine pad parking spaces currently in use; accessed via Waverly Street. As she later put it, "[w]e're **currently a parking lot**." [Reproduced Record (R.R.) at 15.[7]]
>
> 12. Addressing the use refusal for accessory parking, [] Missimer explained that **there is no on**[-]**street parking for the 2000 block of Waverly Street**. She acknowledged that accessory parking is prohibited in Center City zoning districts but cited **numerous neighboring properties with existing accessory parking** and **characterized parking as "common" nearby**. [R.R. at 12.]

---

[6] Page 5 of the ZBA's decision, containing Findings of Fact Nos. 28-35, is not included in the Original Record, the Reproduced Record, or the Appendix to Levy's brief. Those Findings of Fact appear to reference the testimony of Stanley Krakower, Esquire, who represented the CCRA at the hearing.

[7] Levy has failed to comply with Rule 2173, which requires reproduced record pages to be numbered in Arabic figures followed by a small "a," by failing to follow the Arabic figures with a small "a." For ease of reference and consistency, this Court will cite to the pages of the Reproduced Record by Arabic figures without the small "a."

7

13. [] Missimer highlighted that[,] **by[]right under RM[-]1 [Residential] zoning**, **Applicant could construct a multi[-]family triplex with three** (3) **open[-]air parking spaces**. However, given the character of the neighborhood, Applicant did not believe this would be the best use of the site, instead preferring a single-family home. [*See* R.R. at 11.]

. . . .

19. [] Missimer called Noah Ostroff [(Ostroff)] to testify on behalf of [CCD]. [] Ostroff agreed that [] Missimer's statements to that point were true and accurate and adopted them as his own testimony. [*See* R.R. at 16.]

. . . .

23. When asked by the [ZBA] to respond [to CCRA's claim that[,] by creating Parcel A and Parcel B on the Property, Parcel A becomes a Pine Street lot while Parcel B becomes a Waverly Street lot. Thus, Applicant's proposal must satisfy this zoning prohibition on accessory parking applicable to Waverly Street, [] Missimer asserted that **the "accessory" status of parking was a technicality here**. She argued, "**the view and context of the neighborhood is what you're looking at here**," listing nearby streets with parking including Waverly, Pine, Addison, and Lombard Streets. [R.R. at 20.]

. . . .

38. Paula Brumbelow-Burns [Brumbelow-Burns], representing the [City's] Planning Commission, testified that the "Property is indicated for residential use on the comprehensive plan." Brumbelow-Burns stated **the [City's] Planning Commission did not object to the garage parking on Waverly** "[d]ue to the character of the block of Waverly with existing parking**," but the [City's] Planning Commission felt the requested height not necessary and did not recommend the height variance be granted. [R.R. at 68.]

8

R.R. at 73-75 (emphasis added).

Based on the above, the ZBA made the following pertinent Conclusions of Law (COL):

> 9. **The [ZBA] concludes that [] Applicant here established entitlement to the requested use [v]ariance for accessory parking** and dimensional variance for rear[-]yard setback.
>
> . . . .
>
> 11. With respect to accessory parking, the [ZBA] notes that **there is not on**[-]**street parking on the subject block of Waverly Street and that proposed Parcel B**, **which fronts Waverly Street**, **currently serves as a parking lot for nine (9) cars** - **more than the number proposed by Applicant**.
>
> 12. The [ZBA] further notes, as did the [City's] Planning Commission representative, that **parking is common on the block**.
>
> 13. The [ZBA] concludes **these factors are sufficient to establish the hardship required for grant of the requested parking variance**.
>
> 14. The [ZBA] further finds that the proposed use is the minimum necessary [Zoning] Code variance to afford relief. The [ZBA] notes that **the proposed use is equally or less impactful than development permitted [b]y-[r]ight** - a two (2) car garage instead of three (3) open[-]air parking spaces.
>
> . . . .
>
> 19. The [ZBA] concludes that **Applicant's** project including the **requested parking use variance** and rear[-]yard depth dimensional variance, are **in keeping with the Zoning Code's purpose and will not adversely impact the public health**, **safety**, **or welfare**, **including considerations of traffic**, **light and air**, **public facilities**, **or the environment**. **Applicant's project will be in keeping with the residential neighborhood and the existing parking uses nearby**.

9

20. For all of the above[-]stated reasons, the [ZBA] concludes that the requested parking use variance and rear[-]yard setback dimensional variance were properly granted.

R.R. at 77-78 (emphasis added).

Accordingly, the ZBA found: (1) "there are unique physical circumstances or conditions . . . peculiar to the [P]roperty, and that the unnecessary hardship is due to such conditions . . . [,]" Zoning Code §14-303(8)(e)(.2)(.a); *see also* COL 11-13; (2) "[t]hat the use variance . . . will not alter the essential character of the neighborhood . . . [,]" Zoning Code §14-303(8)(e)(.2)(.c); *see also* COL 19; and (3) "[t]hat the hardship cannot be cured by the grant of a dimensional variance[,[8]]" Zoning Code §14-303(8)(e)(.2)(.d).

This Court has held:

"[Applicant] [was] not required to present evidence that the [] [P]roperty could not be utilized for its intended uses or whether there were alternative permitted uses under the [] zoning restrictions to which the [] [P]roperty could be utilized for, nor [was] [Applicant] required to submit evidence that [it] attempted to sell the [] [P]roperty to no avail." *Chosen 300 Ministries* [*v. City of Phila. Zoning Bd.* (Pa. Cmwlth. No. 67 C.D. 2015, filed Jan. 19, 2016),] slip op. at 9-10[.] . . . Indeed, the [Pennsylvania] Supreme Court "explicitly rejected the requirement that an applicant for a variance . . . eliminate every possible permitted use." *Marshall*, 97 A.3d at 332.

*Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 535 (Pa. Cmwlth. 2018). "Th[e Pennsylvania Supreme] Court has repeatedly made clear that in establishing hardship, an applicant for a variance is *not required* to show that the

---

[8] Because the ZBA granted Applicant a rear-yard setback dimensional variance, which did not cure the hardship "'the hardship [could not] be cured by the grant of a dimensional variance.' [Zoning Code] § 14-303(8)(e)(.2)(.d)." *In re Garcia*, ___ A.3d ___, ___ (Pa. Cmwlth. No. 134 C.D. 2020, filed May 10, 2022), slip op. at 22.

10

property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *Marshall*, 97 A.3d at 330.

Moreover, given that the current use of Parcel B is "a parking lot" with nine open-air parking spaces, that Applicant has the right to erect a multi-family unit with three open-air parking spaces, and the proposed single-family home has a two-car garage, R.R. at 15, there is no on-street parking on Waverly Street and parking is "common" nearby, R.R. at 12, and the project will be in keeping with the residential neighborhood and the existing parking uses nearby, *see* R.R. at 20, the change sought is a "more desirable" use than the use by-right, and "will not adversely affect, but better the neighborhood." *Marshall*, 97 A.3d at 330 (quoting *O'Neill*, 120 A.2d at 904). Because the ZBA's "findings [of fact] are [] supported by substantial evidence," this Court cannot conclude that "the [ZBA] abused its discretion." *Id*. at 331 (quoting *Twp. of Exeter*, 962 A.2d at 659).

Levy next argues that the ZBA did not address the adverse impact on the community.[9] Specifically, Levy contends that the statement (Statement) of Levy and her husband (collectively, the Levys) and Levy's testimony were not addressed before the ZBA. CCD rejoins that, while it is clear that the variance will result in the construction of a home that seamlessly fits into the neighborhood and reduces density as compared to a by-right project, there is no evidence whatsoever that the variance will increase congestion or limit access for emergency vehicles.

This Court has held:

> The Zoning Code . . . places the initial burden on the applicant to prove that the proposed use meets all of the Zoning Code's criteria and conditions applicable to the proposed use. The applicant also bears the initial burden of proving that the proposed use will not detrimentally

---

[9] Although this issue was not included in her Statement of the Question Involved, Levy included it in her proposed Answer to the stated question. Levy Br. at 2. Accordingly, this Court will address the argument.

11

impact the neighborhood **beyond what is normally expected from the proposed use** pursuant to seven specific criteria. If the applicant satisfies this initial burden, the objectors, should there be any, have the burden of proving that the proposed use will detrimentally impact the health, safety, and welfare of the neighborhood beyond what is normally expected from the proposed use and may present evidence, and bear the burden of proving, that the proposed use does not conform with the purpose, spirit, and intent of the Zoning Code. In order for the objectors to meet their burden, they cannot merely speculate as to possible harm, but must show "a high degree of probability that the proposed use will substantially affect the health, safety[,] and welfare of the community greater than what is normally expected from that type of use." *Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Bd.*, 739 A.2d 644, 650 (Pa. Cmwlth. 1999) (quotation omitted). The burden placed on the objectors "is a heavy one." *Marr Dev. Mifflinville, LLC v. Mifflin Twp. Zoning Hearing Bd.*, 166 A.3d 479, 483 (Pa. Cmwlth. 2017).

*Monroe Land Invs. v. Zoning Bd. of Adjustment*, 182 A.3d 1, 9 (Pa. Cmwlth. 2018).

Before the ZBA, Levy adopted the statements of her counsel (Counsel), and submitted the Statement. In their Statement, the Levys described in relevant part: "The apartments at 2034-[20]36 Pine Street presently have access to Waverly Street in the event of fire and other disaster. If the proposed structure is built on Waverly Street, there will be no rear egress from the existing structure." R.R. at 226. Similarly, before the ZBA, Counsel stated relative to the use variance:

> [Y]ou have a subdivision of the parcel that would create an interior yard for the Pine Street property that will be landlocked, and that would create a dangerous condition. Fire and emergency vehicles would not be able to access that area, because it would be completely cut off from Waverly Street, and now they can access it, because it's an open area.

R.R. at 35-36. In response thereto, the ZBA Chairman inquired: "Would the by[-]right triplex create the same issue?" R.R. at 36. Counsel responded: "It may, it

12

may, but we are not here on that at this time." *Id*. Missimer rejoined: "[T]he construction would create the same issue." *Id*.

The ZBA concluded:

17. The [ZBA] additionally concludes that the hardship was not self-imposed, and that **the rear yard**[-]**setback variance will not detrimentally impact the public health**, **safety**[,] **or welfare**.

18. The [ZBA] also notes that **Applicant undertook extensive and lengthy project planning and good faith community engagement efforts to resolve neighbors' current and future concerns with the proposal**, despite CCRA's ultimate opposition.

19. The [ZBA] concludes that **Applicant's project**, including the requested parking use variance and rear yard depth dimensional variance, are in keeping with the Zoning Code's purpose and **will not adversely impact the public health**, **safety**, **or welfare**, **including considerations of traffic**, **light and air**, **public facilities**[,] **or the environment**. Applicant's project will be in keeping with the residential neighborhood and the existing parking uses nearby.

R.R. at 78 (emphasis added). Because Levy did not present any evidence that there is "a high degree of probability that the proposed use will substantially affect the health, safety[,] and welfare of the community greater than what is normally expected from that type of use," *Monroe Land Invs.*, 182 A.3d at 9 (quoting *Sunnyside Up Corp*, 739 A.2d at 650), Levy did not meet her "heavy" burden. *Id*. (quoting *Marr Dev. Mifflinville, LLC*, 166 A.3d at 483). Accordingly, the ZBA did not abuse its discretion.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dale Levy,                          :
                    Appellant       :
                                    :
            v.                      :
                                    :
Zoning Board of Adjustment          :    No. 1205 C.D. 2020
of the City of Philadelphia         :

# O R D E R

AND NOW, this 15th day of July, 2022, the Philadelphia County Common Pleas Court's October 16, 2020 order is affirmed.


_____
ANNE E. COVEY, Judge