IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shaler Township, : 
          Appellant : 
   : 
   : 
     v. : 
   : 
Zoning Hearing Board of Shaler : 
Township, Patrick Murray, Allison :   No. 1704 C.D. 2024
Murray, and Robert Neely :   Argued: November 6, 2025


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED: December 23, 2025


Shaler Township (Township)[1] appeals from the Allegheny County Common Pleas Court's (trial court) November 13, 2024 order affirming the Township Zoning Hearing Board's (Board) December 19, 2023 decision that sustained Patrick Murray's (Murray), Allison Murray's, and Robert Neely's (Neely) (collectively, Appellees) substantive validity challenge to Township Ordinance (Ordinance)[2] 1974 (Ordinance 1974), on the basis that Ordinance 1974's amendment of Chapter 225 (Zoning), subsection 225-218 (Definitions) of the Ordinance (Section 225-218) constituted unlawful spot zoning and dismissed the Township's appeal.  The Township essentially presents three issues for this Court's review: (1) whether the trial court erred or abused its discretion by concluding that Appellees have standing; (2) whether subsequent events have mooted Appellees' argument that

---

[1] The Township is a First Class Township in Allegheny County, organized and operating under The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101-58501, by and through its elected Board of Commissioners.

[2] Shaler Twp., Pa., Code of Ordinances (2014).

Ordinance 1974 constitutes unlawful spot zoning; and (3) whether the trial court erred or abused its discretion by upholding the Board's determination that Ordinance 1974 was substantively invalid as unlawful spot zoning.[3]  After review, this Court affirms.

## Background

Murray and his wife, Allison Murray, reside at 445 McElheney Road, adjacent to the property located at 444 McElheny Road in Glenshaw, Pennsylvania (Property), in the Township's R-1 Residential Zoning District (R-1 Zoning District), which was designated for single-family use.[4]  In 2017, Scioto Properties SP-16 LLC (Scioto), a national developer of properties for persons with disabilities and other special needs, purchased the Property with the intention of leasing it to ReMed Recovery Care Centers, LLC (ReMed), a for-profit company that provides rehabilitation to adults who have suffered traumatic brain injuries, for use as a residence for eight unrelated persons with such disabilities.  In 2018, because Section 225-218 permitted only up to three unrelated people to live together as though they are family in a house in the Township's R-1 Zoning District,[5] and the federal Fair

---

[3] In its Statement of Questions Involved, the Township presents five issues: (1) whether Appellees have, and at all times during the course of this litigation, maintained standing to challenge Ordinance 1974's substantive validity; (2) whether subsequent events have mooted Appellees' argument that Ordinance 1974 constitutes unlawful spot zoning; (3) whether the Board erred by considering the Township's purported intent in adopting Ordinance 1974; (4) whether the Board committed an abuse of discretion or error of law in determining that Ordinance 1974, a text amendment applicable to the entire Township, constituted unlawful spot zoning; and (5) whether the Board otherwise committed an abuse of discretion or error of law by determining that Ordinance 1974 was substantively invalid.  *See* Township Br. at 6.  For clarity of analysis and discussion, this Court has combined the Township's issues.

[4] The record does not reflect where Neely lives.

[5] At that time, Section 225-218 defined *family* as:

> Either an individual or two or more persons related by blood or marriage or adoption and, in addition, any domestic servants or

Housing Amendments Act of 1988 (FHAA) prohibits housing discrimination against persons with handicaps,[6] Scioto and ReMed filed an application with the Board raising a substantive validity challenge to the Ordinance. In the alternative, they requested the Board to interpret the Ordinance's definition of *family* to permit the proposed use and/or grant a reasonable accommodation for the proposed use at the Property pursuant to the FHAA or the Americans with Disabilities Act of 1990.[7] However, after hearings, on September 13, 2018, the Board denied and dismissed the application, explaining that Scioto failed to demonstrate how the proposed use complied with the Ordinance's definition of *family* and, in the alternative, failed to show that allowing the proposed use at the Property would be a reasonable accommodation.[8]

On October 29, 2018, Scioto and ReMed filed a civil action in the United States (U.S.) District Court for the Western District of Pennsylvania (District Court) against the Township and the Board,[9] alleging therein that, in denying the 2018 application, the Board and the Township violated the U.S. and Pennsylvania Constitutions and numerous federal statutes, including the FHAA. On January 8, 2019, the District Court granted Appellees' motion to intervene in that civil action.

---

gratuitous guests thereof or a group of not more than three persons who need not be related, who are living together in a single dwelling unit and maintaining a common household. Nothing in this chapter is intended or shall be interpreted, enforced or administered in any means or manner inconsistent with or conflicting with the [f]ederal Fair Housing Amendments Act of 1988[, 42 U.S.C. §§ 3601-3631].

Ord. § 225-218.

[6] *See* Section 3604(f)(2) of the FHAA, 42 U.S.C. § 3604(f)(2). Section 3604(f)(2) of the FHAA includes the refusal to make reasonable accommodations for persons with handicaps. *See* Section 3604(f)(3)(B) of the FHAA, 42 U.S.C. § 3604(f)(3)(B).

[7] 42 U.S.C. §§ 12101-12213.

[8] Scioto and ReMed proposed to add approximately 2,627 square feet to the dwelling, increasing its size to 6,566 square feet, plus 8 parking spaces.

[9] *See Scioto Props. SP-16 LLC v. Twp. of Shaler* (W.D. Pa., No. 2:18-cv-01448).

Following mediation, Scioto, ReMed, and the Township entered into a Full and Final Settlement and General Release of All Claims (Settlement Agreement), wherein they agreed that: (1) Scioto and ReMed would withdraw and dismiss the civil action; (2) Scioto would withdraw the 2018 application; (3) Scioto would submit a new application reducing the number of proposed residents to six, and eliminate its request to double the dwelling size; and (4) the Township would interpret and apply its Ordinance consistent with the FHAA's disabilities clauses and offer a reasonable accommodation to Scioto and ReMed.[10]   Although Appellees attended the mediation, they did not join the Settlement Agreement.  Upon Scioto's and ReMed's request, on February 21, 2020, the District Court dismissed the civil action with prejudice, but without conditions, and added that Appellees retained their right to challenge Scioto's and ReMed's applications in the Township and with the Board.

On July 30, 2020, consistent with the Settlement Agreement's terms, Scioto filed an application for a zoning certificate to use the Property as a residence for not more than six persons with disabilities, along with associated staff.  The Township's Zoning Officer granted an occupancy certificate.  Appellees appealed to the Board which, after a hearing, on December 10, 2020, upheld the Zoning Officer's decision as a reasonable accommodation to ensure the Township's compliance with federal law, essentially taking the position that the Zoning Officer and the Board had no choice but to grant the new application because of federal law and the Settlement Agreement.  Appellees appealed from the Board's decision to the trial court, which heard argument and, on August 11, 2021, affirmed the Board's decision.  Appellees appealed to this Court, arguing that they were not bound by the Settlement Agreement, and the Board erred by disregarding the Ordinance in upholding the

---

[10] Scioto executed the Settlement Agreement on October 16, 2019, ReMed executed it on October 22, 2019, and the Board of Commissioners executed it on November 12, 2019.  Although the Settlement Agreement identified the Board as a released party, the Board did not execute the Settlement Agreement.

4

zoning certificate. *See Murray v. Shaler Twp. Zoning Hearing Bd*. (Pa. Cmwlth. No. 966 C.D. 2021, filed Mar. 14, 2022) (*Murray I*). This Court reversed the Board's decision, holding that the Settlement Agreement did not bind Appellees, that the Settlement Agreement did not allow Scioto and ReMed to circumvent the Ordinance's or the Pennsylvania Municipalities Planning Code's (MPC)[11] ordinance amendment and/or variance process and have six unrelated persons reside at the Property when other property owners were limited to three. *See id*. This Court further ruled that Scioto did not satisfy its initial burden under the FHAA of showing that the requested accommodation was necessary to afford the residents an equal opportunity to use and enjoy the Property, so the burden never shifted to Appellees to prove that the accommodation was not reasonable. *See id*. Neither party appealed from this Court's decision.

According to Appellees, in late 2022/early 2023, Scioto and ReMed nevertheless began moving residents into the Property. On February 6, 2023, Appellees notified the Township, which issued notices of violation to Scioto and ReMed. Thereafter, Scioto and ReMed submitted a new occupancy permit to the Township requesting to house six residents at the Property. The Township denied the permit and Scioto and ReMed appealed to the Board. The Township agreed to delay pursuing its enforcement action and Scioto and ReMed agreed to waive statutory hearing deadlines while the Township undertook steps to change the definition of *family* in Section 225-218.

After learning that there were six residents living at the Property, on June 6, 2023, Appellees filed a complaint in the trial court against ReMed (C.C.P. Allegheny No. GD-23-006996), asserting the same nuisance concerns raised to the

_____

[11] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

5

Board, and seeking to enjoin all facility and business operations at the Property (Private Action). *See* Reproduced Record (R.R.) at 239-240.[12]

On August 8, 2023, the Township's Board of Commissioners, by 4 to 3 vote, enacted Ordinance 1974, which amended the definition of *family* in Section 225-218 to include the underlined portion as follows:

> Either an individual or two or more persons related by blood or marriage or adoption and, in addition, any domestic servants or gratuitous guests thereof or a group of not more than three persons who need not be related, who are living together in a single dwelling unit and maintaining a common household, <u>or six disabled persons or such other minimum number of disabled persons not so related necessary to allow the disabled persons to live in a residential neighborhood (provided that the minimum number of disabled persons does not impose undue financial or administrative burdens or an undue hardship upon the Township or require a fundamental alteration in the Township's [z]oning), living and cooking together as a single housekeeping unit, exclusive of household employees</u>. Nothing in this chapter is intended or shall be interpreted, enforced[,] or administered in any means or manner inconsistent with or conflicting with the [FHAA].

Ord. § 225-218 (emphasis added) (*see* also Township Br. Ex. B).

On August 16, 2023, Appellees filed a request for a public hearing with the Township's Zoning Officer, challenging the substantive validity of Ordinance 1974.[13] The Board conducted a public hearing on October 3, 2023. *See* R.R. at 182-

---

[12] In the Reproduced Record, the Township did not number the pages with a small "a" as required by Pennsylvania Rule of Appellate Procedure (Rule) 2173. *See* Pa.R.A.P. 2173 (providing "the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . : thus 1, 2, 3, etc., followed . . . by a small a, thus la, 2a, 3a, etc. . . . ."). This Court's references to the page numbers herein are consistent with the Township's Reproduced Record.

[13] Appellees also challenged Ordinance 1974's procedural validity and challenged it on the grounds of contract zoning. The Board held that it lacked jurisdiction over procedural validity challenges, as they must be presented to the trial court pursuant to Section 5571.1 of the Judicial Code, 42 Pa.C.S. § 5571.1 (relating to appeals from procedures related to enacting or adopting

298. Murray, a licensed attorney, participated in the Board hearing as both legal counsel and Appellees' representative. On December 19, 2023, the Board held a special meeting during which it voted 2 to 1 to grant Appellees standing and sustain their substantive validity challenge on the basis that Ordinance 1974 uniquely affected the Property due to its size and orientation and, thus, constituted unlawful spot zoning. *See* R.R. at 328-340.

On January 18, 2024, the Township appealed to the trial court. On January 24, 2024, Appellees filed a notice of intervention pursuant to Section 1004-A of the MPC,[14] which the Township moved to quash on the grounds that, as adjacent property owners, they were not directly involved in the appeal. The trial court quashed Appellees' notice of intervention, but granted them leave to file a petition to intervene, which they did on March 1, 2024. On March 21, 2024, the Township challenged Appellees' standing to bring the substantive validity challenge. On May 6, 2024, the trial court granted Appellees' petition to intervene and directed the parties to file briefs. On November 13, 2024, the trial court affirmed the Board's determination that Appellees had standing to bring their substantive validity challenge, and upheld the Board's conclusion that Ordinance 1974 constituted unlawful spot zoning. *See* Township Br. Ex. A.

On December 10, 2024, the Township appealed to this Court.[15] On December 11, 2024, the parties entered into, and the trial court approved, a

_____

ordinances). *See* Township Br. at 10 n.2; *see also* R.R. at 221-222. The Board also concluded that Ordinance 1974 was not invalid on contract zoning grounds. *See* Township Br. at 13 n.7. Appellees did not appeal from those determinations to the trial court or to this Court. Accordingly, those issues are not before this Court for review.

[14] Section 1004-A of the MPC was added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11004-A.

[15] "Where the trial court takes no additional evidence, [this Court's] review in a land development appeal is limited to determining whether the local governing body committed an error

Settlement Agreement of the Parties (Consent Order) in the Private Action under which the parties agreed that Scioto/ReMed would remove their residents from the Property no later than March 31, 2025. *See* Township Br. Ex. D, Consent Order.[16]

of law or an abuse of discretion." *Grim v. Maxatawny Twp. Bd. of Supervisors*, 297 A.3d 1, 5 n.7 (Pa. Cmwlth. 2023) (quoting *Berner v. Montour Twp.*, 120 A.3d 433, 436 n.5 (Pa. Cmwlth. 2015)).

> "An abuse of discretion occurs when [a local agency's factual] findings are not supported by substantial evidence in the record." *Coal Gas Recovery, L.P. v. Franklin T*[*wp.*] *Zoning Hearing B*[*d.*], 944 A.2d 832, 838 (Pa. Cmwlth. 2008). "By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass*[*'n*] *v. Zoning B*[*d.*] *of Adjustment*, . . . 462 A.2d 637, 640 ([Pa.] 1983) (citations omitted).

*Mahoning Twp. v. Zoning Hearing Bd.*, 320 A.3d 861, 868 n.2 (Pa. Cmwlth. 2024). "[This Court] appl[ies a] deferential standard of review because [it] do[es] not sit as 'a super [zoning hearing board]' and thus '[t]he necessity must be clear before there is justification for judicial interference with the municipality's exercise of its zoning power.'" *Plum Borough v. Zoning Hearing Bd. of Borough of Plum*, 310 A.3d 815, 823 (Pa. Cmwlth. 2024) (quoting *Robert Louis Corp. v. Bd. of Adjustment of Radnor Twp.*, 274 A.2d 551, 555 (Pa. Cmwlth. 1971)).

By May 5, 2025 letter, the Board notified this Court that it did not intend to file a brief.

[16] Because the Consent Order was not executed until the day after this appeal commenced, it was not offered or admitted into the record before the trial court and, thus, is not part of the Original Record. The Township appended it to its brief on appeal to this Court. *See* Township Br. Ex. D (Consent Order). The Township purported to incorporate it into its brief by reference, *see id*. at 12, pursuant to Pennsylvania Rule of Civil Procedure (Rule) 1019(g), which states:

> Any part of a pleading may be incorporated by reference in another part of the same pleading or in another pleading in the same action. A party may incorporate by reference any matter of record in any [s]tate or [f]ederal court of record whose records are within the county in which the action is pending, or any matter which is recorded . . . in the office of the prothonotary . . . of such county.

Pa.R.Civ.P. 1019(g). However, Rule 1019(g) relates to incorporating such information into *pleadings*, not briefs. The Township has not asked this Court to take judicial notice of the Consent Order.

"A court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court." *Styers v. Bedford Grange Mut. Ins. Co.*, 900 A.2d 895, 899 (Pa. Super. 2006) (quoting *220 P'ship v. Phila. Elec. Co.*, 650 A.2d 1094, 1097 (Pa. Super. 1994)). Notwithstanding, this Court "may take judicial notice on its own," Pennsylvania Rule of Evidence 201(c)(1), Pa.R.E.

8

The parties agreed that if the relocation timely occurred,[17] Appellees would discontinue the Private Action with prejudice. *See id*. Scioto and ReMed agreed that neither they nor their affiliates nor subsidiaries would seek to operate a group home facility at the Property in the future. *See id*.

## Discussion

1. <u>Standing</u>

The Township argues that the trial court erred or abused its discretion by concluding that Appellees had standing before the Board and maintained standing to challenge the substantive validity of Ordinance 1974 at all times during the course of this litigation. It claims that Appellees did not have standing before the Board to challenge Ordinance 1974 because their interest was not substantial, direct, or immediate, and they have failed to challenge a specific or pending permit. The Township adds that since Appellees' purported standing hinged on spot zoning of the Property which, pursuant to the Consent Order, neither Scioto nor ReMed nor their affiliates or subsidiaries can operate as a group home, any alleged benefit Ordinance 1974 conferred on the Property has been eliminated, along with Appellees' interest therein.

---

201(c)(1), of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pennsylvania Rule of Evidence 201(b)(2), Pa.R.E. 201(b)(2); *see also Moss v. Pa. Bd. of Prob. & Parole*, 194 A.3d 1130 (Pa. Cmwlth. 2018) (taking judicial notice of docket entries that were not contained in the original record); *Miller v. Unemployment Comp. Bd. of Rev.*, 131 A.3d 110 (Pa. Cmwlth. 2015) (taking judicial notice of a docket and records contained therein). Where, as here, the Consent Order's filing in the trial court is not subject to reasonable dispute, and Murray admitted that he filed the Private Action and "there is a consented-to court order prohibiting the specific facility owners from using the [P]roperty as a facility for disabled persons[,]" Appellees' Br. at 19, this Court will take judicial notice thereof.

[17] The record does not reflect if or when Scioto and ReMed moved their residents. However, neither party disputes that the move occurred.

9

Initially,

> [s]tanding is a "threshold requirement that must be established prior to judicial resolution of a dispute." [*Pa. State Educ. Ass'n v. Pub. Sch. Emps.' Ret. Bd.*, 311 A.3d 1017, 1028 (Pa. 2024).] Pursuant to the standing doctrine, "judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract." *Id*. To that end, the standing doctrine protects against "improper plaintiffs" by preventing litigation by "a person who is not adversely impacted by the matter he seeks to challenge." *Id*. at 1028-29.

*G.F. v. Pa. Dep't of Hum. Servs.*, 335 A.3d 1263, 1271-72 (Pa. Cmwlth. 2025); *see also In re Gun Range, LLC*, 311 A.3d 1242 (Pa. Cmwlth. 2024), *cert. denied sub nom. Gun Range, LLC v. City of Phila., Pa.*, 145 S. Ct. 1174 (2025).

Section 916.1(b) of the MPC[18] provides:

> **Persons aggrieved by a use** or development **permitted on the land of another by an ordinance** or map, or any provision thereof, **who desires** [sic] **to challenge its validity on substantive grounds** shall first submit their challenge to the zoning hearing board for a decision thereon under [S]ection 909.1(a)(1) [of the MPC, 53 P.S. § 10909.1 (relating to a zoning hearing board's jurisdiction].[19]

53 P.S. § 10916.1(b) (emphasis added). Relative to spot zoning challenges, "this Court [has] held that a property owner need not establish pecuniary or financial loss if his **property is located in close proximity to the subject property**[20] because

---

[18] Added by Section 99 of the Act of December 21, 1988, P.L. 1329.

[19] Added by Section 87 of the Act of December 21, 1988, P.L. 1329.

[20] This Court has expounded:

> [T]he owner of property that is within 400 to 600 feet of the challenged zoning district is [] within close proximity and has standing. However, the owners of property one-half mile and one mile or more away from the challenged zoning area have been

the zoning decision is **presumed to have an effect** on the property owner's property." *Laughman v. Zoning Hearing Bd. of Newberry Twp.*, 964 A.2d 19, 22 (Pa. Cmwlth. 2009) (emphasis added). Therefore, **to have standing to challenge an ordinance on grounds of spot zoning**, **a property owner need only establish that his "property [] is adjacent to or abuts the zoning area in question**[.]"[21] *Id.*

> deemed to not be in close proximity in order to confer standing on those challenging a change to the zoning ordinance or map.

*Laughman v. Zoning Hearing Bd. of Newberry Twp.*, 964 A.2d 19, 22-23 (Pa. Cmwlth. 2009) (citation omitted).

[21] Owners whose properties are not in such close proximity to the subject property must show some sort of injury to have standing to challenge an ordinance amendment. *See Carnahan v. Slippery Rock Twp. Zoning Hearing Bd.*, 305 A.3d 211 (Pa. Cmwlth. 2023) (owner of property seven or eight miles away from the subject property and who only testified as to speculative concerns lacked standing); *see also Laughman.* Accordingly,

> the party must have an interest in the matter that is substantial, direct, and immediate. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, . . . 346 A.2d 269, 280 ([Pa.] 1975).

> > A substantial interest is one in which there is "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *William Penn*, 346 A.2d at 282. A "direct" interest requires a showing that the matter complained of causes harm to the party's interest. *Upper Bucks* [*Cnty.*] *Vocational-Technical* [*Sch. Educ. Ass'n*] *v. Upper Bucks* [*Cnty.*] *Vocational-Technical School Joint Comm*[.], . . . 474 A.2d 1120 ([Pa.] 1984). An "immediate" interest is something more than a "remote consequence" and centers on the causal nexus and proximity between the action complained of and the injury to the party challenging it. *William Penn*, 346 A.2d at 283; *Skippack* [*Cmty.*] *Ambulance* [*Ass'n*]*, Inc. v.* [*Twp.*] *of Skippack*, . . . 534 A.2d 563 ([Pa. Cmwlth.] 1987). The requirement that the interest be "immediate" is also met where it falls within the "zone of interests sought to be protected by the statute or constitutional guarantee in question." *Upper Bucks* [*Cnty.*], 474 A.2d at 1122. Finally, the rationale underlying the requirement that the party be "aggrieved" or "adversely

11

at 22 (emphasis added); *see also Carnahan v. Slippery Rock Twp. Zoning Hearing Bd.*, 305 A.3d 211 (Pa. Cmwlth. 2023) (owners of property within 50 feet and 250 yards of the property the ordinance rezoned had standing to challenge the ordinance); *Seeherman v. Wilkes-Barre City Zoning Hearing Bd.*, 400 A.2d 1334, 1336 (Pa. Cmwlth. 1979) ("An [a]ppellant's status as a landowner, by virtue of his legal ownership of a neighboring property . . . qualifie[s] him as a 'person aggrieved' within the intendment of [Section 916.1(b) of] the MPC."[22]).

In the instant matter, Murray testified that he and his wife, Allison Murray, own property that directly abuts the Property.[23, 24] *See* R.R. at 186. Despite that there was no record evidence of precisely which property Neely owns, Murray represented that Neely's property was one of the seven properties that surround the Property. *See* R.R. at 243-244.

Although, as an abutting property owner, he was not required to do so in order to have standing in this instance, *see Laughman*, Murray further detailed that, from 2022/early 2023 to late 2024/early 2025, when six ReMed clients resided at the Property, such use affected the specific use and enjoyment of his home. He claimed to have observed up to 15 vehicles parked at and coming to and going from the Property, especially during staff shift change times, 6:00 a.m. to 8:00 a.m., when

---

affected" by the action at issue is to ensure that a legal challenge is made by the appropriate party.

*Pittsburgh Tr. for Cultural Res. v. Zoning Bd. of Adjustment of* [*the*] *City of Pittsburgh*, . . . 604 A.2d 298, 303-04 ([Pa. Cmwlth.] 1992).

*Carnahan*, 305 A.3d at 217-18; *see also Laughman*.

[22] Added by Section 99 of the Act of December 21, 1988, P.L. 1329. *Seeherman* referenced Section 1004 of the MPC, *formerly*, 53 P.S. § 11004, repealed by Section 100 of the Act of December 21, 1988, P.L. 1329. Section 916.1 of the MPC, which is substantially similar to Section 1004 of the MPC, replaced Section 1004 of the MPC.

[23] Allison Murray neither appeared before the Board nor offered evidence. *See* R.R. at 184.

[24] Although Neely attended the Board hearing, he declined to testify. *See* R.R. at 183-184, 223.

his daughter was waiting for the school bus, and again in the mid-afternoon. *See* R.R. at 216-217. Murray stated that, on several occasions, 10 to 12 vehicles parked at the Property for multiple hours. *See* R.R. at 218. He complained that his children do not wish to play in the front yard, which is "the biggest part of [the Murrays'] yard." R.R. at 242.

When asked whether the Property's use uniquely affected his and Allison Murray's property, Murray testified:

> I think ours is impacted probably a little bit more than some of the other ones would be because of the set-up of th[e] [P]roperty such as their parking lot or whatever you want to call it butts up against our property line. And I often have [8] to [10] vehicles that are literally parked on my property line . . . .

R.R. at 244-245. Murray recalled that he notified the Township and provided photographs of the vehicles, plus registered complaints about lighting and garbage at the Property. *See* R.R. at 218-219, 242.

Based on that evidence, the Board made findings regarding the specific impacts on the Murray property, *see* Board Dec. at 6 (Findings of Fact (FOF) 31-36), including that the Property is approximately 1.8 acres, whereas the minimum lot size in the R-1 Zoning District is 9,000 square feet.[25] *See id.* (FOF 40). The Board concluded that, although Ordinance 1974 would affect other group homes in the Township's residential zoning districts, *see id.* (FOF 38),

> Murray was able to speak to the impact of [Ordinance 1974] and the use of the Property on his interest in the use and enjoyment of his and Allision Murray's adjoining lot. He was able to do so without speculation because the use of the Property as authorized by [Ordinance 1974] is already in effect.

---

[25] The Board cited to *Murray I* and Section 225-24 of the Ordinance, Ord. § 255-24, for the sizing information.

13

Board Dec. at 8 (Conclusion of Law (COL) 10). The Board added:

> Although [] Murray wanted to highlight his argument that [Ordinance 1974] was created so as to procure a specific and distinct benefit for Scioto and ReMed and to the detriment to all other Township residents, it is clear that his individual property is disproportionately affected by [Ordinance 1974] and its impact on the Property as described throughout[, ] so as to confer standing.

Board Dec. at 8-9 (COL 12). The Board further concluded that "Neel[]y also owns a lot in close proximity to the Property." *Id*. (COL 11).

Because substantial record evidence supported its findings, which comport with precedential law, the Board did not err or abuse its discretion by concluding that Appellees had the requisite standing to challenge Ordinance 1974's validity. *See Mahoning Twp. v. Zoning Hearing Bd.*, 320 A.3d 861 (Pa. Cmwlth. 2024); *see also Grim v. Maxatawny Twp. Bd. of Supervisors*, 297 A.3d 1 (Pa. Cmwlth. 2023). Accordingly, the trial court did not err by upholding the Board's conclusion as to standing.

Relative to the Township's argument that Appellees lost their standing by virtue of the Consent Order because ReMed can no longer operate a residential facility at the Property, this Court acknowledges that ordinance challengers can lose standing once they are no longer aggrieved. *See Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Bd.*, 739 A.2d 644 (Pa. Cmwlth. 1999) (equitable owner lost standing to challenge when its option to purchase a quarry abutting the proposed site of a facility expired). However, Appellees' challenge herein is to the effect of Ordinance 1974, which still permits up to six disabled persons to live in a group home at the Property. As of the time of the Board hearing and the trial court's decisions, Scioto still owned the Property and Appellees still owned their respective properties in close proximity thereto. Despite that the Consent Order prohibits Scioto (the Property's owner) and ReMed (the residential group home operator) and

14

their affiliates and subsidiaries, from operating a residential group home for disabled adults at the Property in the future, *see* Township Br. Ex. D at 2, nothing therein binds or prohibits other residential group home providers from purchasing the Property and conducting an identical operation - particularly when the Property remains outfitted for such use. Accordingly, the undisputed record evidence constrains this Court to conclude that Appellees have not lost their standing under the Consent Order.

2. Mootness

The Township also asserts that the Consent Order mooted Appellees' argument that Ordinance 1974 constitutes unlawful spot zoning. Specifically, the Township contends that Scioto and ReMed agreed in the Consent Order to cease use of the Property as a facility for disabled persons, and thereby have eliminated any alleged benefit created by Ordinance 1974 beyond that provided to any other property within the Township.

> "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Commonwealth v. Nava*, 966 A.2d 630, 632-33 (Pa. Super. 2009). Stated differently, "[a]n issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Id*. at 633. Cases presenting mootness problems are those that involve litigants who clearly had standing to sue at the outset of the litigation. "The problems arise from events occurring after the lawsuit has gotten underway - changes in the facts or in the law - which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *In re Gross*, . . . 382 A.2d 116 ([Pa.] 1978) (quoting G. Gunther, *Constitutional Law* 1578 (9th Ed. 1975)).

15

> This Court will not decide moot questions. Pa.R.A.P. 1972(4).

*Chruby v. Dep't of Corr.*, 4 A.3d 764, 770-71 (Pa. Cmwlth. 2010). However, "[e]xceptions to this [mootness] principle are made where (1) the conduct complained of is capable of repetition yet likely to evade review, (2) the case involves issues important to the public interest, or (3) a party will suffer some detriment without the court's decision." *Id*. at 771.

As stated above, because nothing in the Consent Order binds or prohibits other residential group home providers from purchasing the Property and conducting an identical operation under Ordinance 1974, and Appellees maintain their ownership of their properties, there remains an actual controversy, thus, the Consent Order does not moot Appellees' challenge to Ordinance 1974 as unlawful spot zoning. Even if the Consent Order rendered Appellees' challenge moot, there is no question that the validity of Ordinance 1974 is important to the public interest - in protecting the safety, health, and welfare of the community - and because the conduct complained of is capable of repetition yet is likely to evade review, *see Chruby*, this case falls under the exceptions to the mootness doctrine. Accordingly, subsequent events have not mooted Appellees' argument that Ordinance 1974 constitutes unlawful spot zoning.

3. Spot Zoning

The Township also contends that the trial court erred or abused its discretion by upholding the Board's determination that Ordinance 1974, a text amendment applicable to the entire Township, was substantively invalid as unlawful spot zoning and the Board erred by considering the Township's intent in adopting Ordinance 1974.

16

This Court has declared:

Spot zoning is the "unreasonable or arbitrary classification of a small parcel of land, dissected or set apart from surrounding properties, with no reasonable basis for the differential zoning." *Atherton Dev. Co. v. Twp. of Ferguson*, 29 A.3d 1197, 1204 (Pa. Cmwlth. 2011) (quoting *BPG Real Est*[.] *Inv*[s.] - *Straw Party II, L.P. v. Bd. of Supervisors of Newtown Twp. Del*[.] *Cnty.*, 990 A.2d 140, 150 (Pa. Cmwlth. 2010); *Christman v. Zoning Hearing Bd. of Twp. of Windsor*, 854 A.2d 629, 634-35 (Pa. Cmwlth. 2004)). "**When faced with a spot zoning challenge**, **a reviewing court must presume the zoning ordinance is valid and constitutional**; the burden of proving otherwise is on the **challenging party**, who **must show that the provisions are arbitrary and unreasonable**, **and have no relation to the public health**, **safety**, **morals**, **and general welfare**." *Atherton*, 29 A.3d at 1204 (quoting *Christman*, 854 A.2d at 635).

"Spot zoning must be clearly established; if the validity of the rezoning ordinance is debatable, it must be permitted to stand." *Id.* The most determinative factor in an analysis of a spot zoning question is whether the parcel in question is being treated unjustifiably different from similar surrounding land, thus creating an "island" having no relevant differences from its neighbors. *Id.*

*Penn St., L.P. v. E. Lampeter Twp. Zoning Hearing Bd.*, 84 A.3d 1114, 1121 (Pa. Cmwlth. 2014) (emphasis added).

The *Penn St., L.P.* Court expounded:

This Court explained spot zoning as follows:

The key point is that **when a municipal governing body puts on blinders and confines its vision to just one isolated place or problem within the community**, **disregarding a community-wide perspective**, that body is not engaged in lawful zoning, which necessarily requires that the picture of the whole community be kept in mind while dividing it into compatibly related zones by ordinance enactments. In other words, legislation

17

> as to a spot is the antithesis of zoning, which necessarily functions within a community wide framework. . . . [Z]oning, to be valid, must be in accordance with a rational and well considered approach to promoting safety, health[,] and morals and a coordinated development of the whole municipality.
>
> *Twp. of Plymouth v. Cnty. of Montgomery*, . . . 531 A.2d 49, 57 ([Pa. Cmwlth.] 1987).
>
> "There is **no precise formula** for determining whether a classification of property constitutes spot zoning and **cases should be decided on the facts guided by case law**." *Sharp v. Zoning Hearing Bd. of Twp. of Radnor*, . . . 628 A.2d 1223, 1228 ([Pa. Cmwlth.] 1975).

*Id*. (emphasis added). "However, the [Pennsylvania Supreme C]ourt stated that the size of the property is one factor to consider in addition to unjustifiable differential treatment accorded the property. The topography, location, and characteristics of the tract are also among the factors to consider." *Knight v. Lynn Twp. Zoning Hearing Bd.*, 568 A.2d 1372, 1375 (Pa. Cmwlth. 1990). Moreover, spot zoning's differential treatment can be in the form of "the economic benefit of the owner of that lot or to his economic detriment[.]" *Id*. (quoting *Appeal of Mulac*, 210 A.2d 275 (Pa. 1965)).

Significantly, the fact that Ordinance 1974 is applicable to the entire Township, "while relevant, is not dispositive, and if there are material factors indicating unlawful spot zoning, as were found here, then a given rezoned parcel of land may be held to be the object of spot zoning." *Baker v. Chartiers Twp. Zoning Hearing Bd.*, 677 A.2d 1274, 1277-78 (Pa. Cmwlth. 1996). To hold otherwise would be to improperly insulate from review all allegations of spot zoning if the zoning hearing board makes it applicable to the entire township, notwithstanding that only one parcel may benefit. *See id*.

18

At the Board hearing, Murray testified that he first learned of the Township's stay of its enforcement action against Scioto/ReMed and the Board of Commissioners' amendment to Ordinance 1974 in June 2023. *See* R.R. at 237-241. Murray admitted that Ordinance 1974 affects every family in the Township, including the existing 28 group homes, and does not specifically reference the Property, *see* R.R. at 232-234, but claimed the Township appeared to choose the six-resident limit therein based on the Settlement Agreement, implying that the amendment was enacted purely to appease ReMed.

> Murray declared:
>
> A. . . . **I'm upset because [Ordinance 1974] mirrors the [S]ettlement [A]greement**. And I don't see any other basis from any of the research I've done to do six, other than to allow that to occur at [the Property] so that [ReMed], which has a history of suing if [it] do[es]n't get [its] way, doesn't sue [the Township].
>
> Q. **So you believe that [the Township] handpicked the number six from the [S]ettlement [A]greement from the prior case**?
>
> A. **I do**.

R.R. at 231 (emphasis added).

> Murray added:
>
> I would have personally put no number in that related to disabled people. **I would have left the number as is at three**, **or I would have picked another number not higher than four**, based on whatever other factors for the regular [sic]. Then I would have put the language that follows *Lapid-Laurel*[*, L.L.C. v. Zoning Board of Adjustment of Township of Scotch Plains*, 284 F.3d 442 (3d Cir. 2002)], that would talk about necessity. And I would specifically mirror the federal case law and what the standard is.
>
> . . . .

19

I even told [the] Township that if the number six wasn't in it, I wouldn't have challenged it. If you would have had three, four, five, I wouldn't have challenged it.

Q. So there are numbers you would like to see, but those aren't the numbers that [the Township] picked?

A. Like, I don't know that I would like to see them. I told you what my preference would be. It would be in the three to four range mirroring [] *Lapid-Laurel*. The reason **I don't think this one should hold muster is because I think it is directly related to that [P]roperty**. I have done a ton of research, and I have not seen any case that says six is the required number. So that's how I feel.

R.R. at 231-233 (emphasis added); *see also* R.R. at 250.

Murray further testified:

Q. Do you have any proof or any evidence that members of the Board of Commissioners had discussions with the owners at ReMed to strike a deal with respect to the number six?

A. Do I know -- I would not -- I certainly wouldn't be privy to those conversations. The only thing I know is that receiving the email from you that it was agreed to be stayed while the [O]rdinance [1974] issue is going on. And, also, counsel for ReMed had stated in court that there was [sic] appeals that were stayed and that there was an upcoming Board of Commissioners meeting on an [O]rdinance change. Other than both you and he noting that they were stayed, I don't have any personal information.

R.R. at 235; *see also* R.R. at 248 (Murray stated he merely has a firm belief based on circumstantial evidence); R.R. at 252-253 (Murray maintained that the Township is making the change just to keep ReMed from suing the Township).

When asked to explain the impact of Ordinance 1974, Murray focused on the magnitude of a residential group home housing six people with its attendant traffic negatively impacting the Township's residential zoning districts in general. He articulated:

20

A. . . . So **I don't want to say that I think it negatively impacts my home** as the response. I think whenever you have a facility like that -- and I think the law would support it -- is we do protect residential areas. And there is a big part of our society that has these regulations so that people can buy a home in a nonbusiness district.

And when you have something that commercial going on next door, yes, it's frustrating. But **I don't think it's just my property or just** [] **Neely's property**. As a matter of fact, there [are] seven properties that touch it.

But I think whenever that is permitted in residential areas, **you lose the character of what this residential neighborhood is**. . . . I certainly don't have a problem if people with disabilities are living next door. They have before.

. . . . Everything comes down to whether or not when you get up to that number in this [O]rdinance [1974] you are allowing for facilities like this to take place, as opposed to it being just living together as a single housekeeping unit that shares meals together, which is what was originally the testimony of what that place would be.

Q. Well, let's talk about how other properties might be affected in the same way as yours. So [] Neely's -- you said there are about six or seven homes on the street that would be affected?

A. I believe there [are] seven that border it. **The traffic coming in and out**, **especially around school bus time**, **I think negatively impacts the entire community**.

Q. **The entire community**?

A. **Yeah** [sic]. Because of the safety of our children within the community. If you have something -- I don't want to focus solely on one property, because that would be more of a hearing on that property and what they're doing. This is **if the number six goes through**, **as you've noted**, **it could be throughout the entire** [T]ownship.

Q. Right.

21

A. So I think that **would be a huge problem for the [T]ownship**.

Q. **It just wouldn't be unique for your property**; **it would be something that would impact all the other properties who were in a similar situation**?

A. **I believe so**.

. . . .

Q. . . . What if there were four? You seem to be comfortable with four. What if it were four and you still had eight vehicles parked behind the facility?

A. I believe that that would come down to how it's being operated, whether or not it's meeting the other portions of it. . . . And **I would still object if the traffic and the number of vehicles coming in** [sic] **and it looked to be operating as a facility** rather than a single housekeeping unit sharing meals, as the case law in my opinion states.

. . . .

Q. . . . And the[ other homes in the Township's residential zoning districts,] would all be similarly affected by what's going on by raising the number from two to six. **It's not just you who is being affected**?

A. I think I stated that. **I think the community as a whole**.

R.R. at 242-246 (emphasis added). Murray pointed out that Ordinance 1974 opens the door for the other group homes for disabled persons in the Township's residential zoning districts to increase the number of residents to six.[26]

The Township presented the testimony of Township Manager Chris Lovato (Lovato), who stated that the Board of Commissioners began working to amend Ordinance 1974 in December 2022, after recognizing that its previous

---

[26] Murray expressed: "I actually believe that some of the[ existing group homes] were operating at four, and it was kind of understood that four was often not looked down upon as long as there wasn't too much traffic and other problems with the house. That was my understanding through this whole process." R.R. at 234.

definition of *family* would not withstand scrutiny under the FHAA. *See* R.R. at 256, 258, 260, 262, 268-269, 276, 283. He admitted that discussions regarding Ordinance 1974 corresponded with ReMed moving residents into the Property. *See* R.R. at 277. Lovato recalled that, with this Court's *Murray I* decision in mind, the Board of Commissioners had its solicitor conduct an analysis of federal case law throughout the country[27] to determine what number of residents would be upheld under the FHAA and what surrounding municipalities have in place and, after reviewing numerous options (including eight residents), ultimately determined that number to be six. *See* R.R. at 257-259, 263-264, 269-271, 275-276, 278-280, 285. Lovato also indicated that, in light of this Court's admonition in *Murray I*, the Board of Commissioners felt it necessary that such decisions must be legislative and not left to the Zoning Officer's discretion. *See* R.R. at 259-260, 280. He further expressed that the Board of Commissioners also considered the effect of Ordinance 1974 on neighbors. *See* R.R. at 264.

Lovato recalled that the Board of Commissioners discussed the proposed amendment at just about every meeting from December 2022, to when it adopted Ordinance 1974 in August 2023. *See* R.R. at 265-266, 274. He declared that the potential that ReMed would sue the Township again "100[%] was one of the reasons" for the amendment. R.R. at 266. Lovato did not recall the Board of Commissioners ever discussing the Settlement Agreement relative to Ordinance 1974. *See* R.R. at 267, 274. However, he agreed that the Township intended to pursue the enforcement action against ReMed until the Ordinance 1974 decision was made; the Township did not want to carry out the enforcement action and immediately thereafter amend the law such that no violation would have occurred.

---

[27] Lovato explained that while the federal case law states what a municipality cannot do under the FHAA, it does not clearly reflect what a municipality can do to comply with the law, so there is no magic number of residents that satisfies a zoning ordinance addressing residential homes for disabled persons. *See* R.R. at 284.

*See* R.R. at 286-287. Lovato insisted that the Township did not have a deal with ReMed to use the number six in Ordinance 1974. *See* R.R. at 267-268, 273-274. He declared that although the Property will benefit from Ordinance 1974, the amendment affects every residential property and family in the Township, and was not targeted at the Property. *See* R.R. at 268. Lovato related that "the fact that [Ordinance 1974] affects [the Property]" was "not a major part of the process[,]" but "was certainly part of the process." R.R. at 269.

The Township also presented Zoning Officer Robert Vita (Vita), who estimated that there are several thousand families in the Township, Ordinance 1974 governs all of them, and does not single out any particular property. *See* R.R. at 291. He added that Ordinance 1974 relates to the health, safety, morals, and general welfare of the Township, and was justified. *See* R.R. at 291-292.

Based on that evidence, the Board found:

23. [The *Murray I* Opinion] lead the Township to believe it needed to amend the [] Ordinance to provide for a particular number of unrelated, disabled people that could fall within the definition of "[f]amily."

24. When drafting [Ordinance 1974], the Township looked to federal case law as well as the language used in other municipalities.

25. However, at the hearing, [Appellees] submitted [10] definitions of "[f]amily" from nearby municipalities in an effort to show "that there is a lot of inconsistency with what [the Township] has compared to those, which goes to our belief that there is more to this than what the research indicates; and **it goes more to the history and [S]ettlement [A]greement that ended up getting overturned**." [R.R. at 205].

26. After considering numbers ranging from three to eight, and reviewing its [s]olicitor's advice, the Township selected the number six for use in [Ordinance 1974].

24

27. Six also happens to be the number of unrelated people living at the Property today.

28. **The previous [federal l]awsuit filed against the Township by the Property owner [] "100[% was] one of the reasons" for [Ordinance 1974]**. [R.R. at 266].

29. "[T]he fact that [Ordinance 1974] affects [the Property] was certainly part of the process [for enacting [Ordinance 1974]." [R.R. at 269].

30. **In fact, the reason the discussions about [Ordinance 1974] began in December 2022[,] was because ReMed began the process of moving into the Property**.

Board Dec. at 5-6 (FOFs 23-30) (record citations omitted) (emphasis added).

The Board concluded:

28. Here, there can be no question that [Ordinance 1974] was specifically designed to allow for the particular use of the Property by ReMed for six unrelated individuals. . . . This targeted [a]mendment to . . . Ordinance [1974] provides for economic benefit to ReMed.

29. **Although [Ordinance 1974] theoretically applies to all families and group home facilities in the Township, the Property is uniquely affected due to its size and orientation**.

30. For instance, **it is unlikely many other residential properties used for only one [f]amily could accommodate on-site parking for [15] vehicles**.

31. Further, [**Appellees**] **were able to provide non-speculative evidence of the detriment that the high-density residential use has in an otherwise low-density R-1 [Zoning] District**.

32. There is more traffic to and from the Property than from any other residential property in the neighborhood. In addition to traffic, the Property also has a higher amount of exterior lighting and garbage production when compared to other residential properties in the neighborhood. All of the foregoing leading to children not wanting to play in their front yards.

25

33. Accordingly, [**Ordinance 1974**] **is targeted toward the benefit of Scioto and ReMed**, **as owners of the Property**, **and without relation to health**, **safety**, **morals**[,] **or general welfare of the Township at large**.

Board Dec. at 11-12 (COLs 28-33) (record citations omitted) (emphasis added). "[A]s the sole arbiter of witness credibility and evidentiary weight," *Carnahan*, 305 A.3d at 224, the Board determined based on the record evidence that the Township had the Property in mind when it amended Ordinance 1974, the amendment coincided with ReMed moving residents into the Property, and ReMed stands to benefit from the amendment. Moreover, "for the Property to be considered spot zoned, [n]eighbors also must prove that the provisions at issue are arbitrary and unreasonable and that they have no relation to the public health, safety, morals, and general welfare." *Conshohocken Borough v. Conshohocken Borough Zoning Hearing Bd.*, 261 A.3d 582, 596 (Pa. Cmwlth. 2021). Despite that the Board's focus appeared to be on the intent behind Ordinance 1974, the Board also credited Murray's testimony regarding the traffic, lighting, and garbage ancillary to ReMed's operation of a six-person home at the Property and properly determined that Ordinance 1974 is "arbitrary and unreasonable and that [it has] no relation to the public health, safety, morals, and general welfare" of the Township's residents. *Conshohocken Borough*, 261 A.3d at 596.

> This Court
>
> may not engage in fact[-]finding or disturb the Board's credibility determinations on appeal. Where, as here, the findings of fact are based on substantial evidence, those findings are binding on this Court for purposes of appellate review.[28] Consequently, in employing a substantive due

---

[28] "[This Court] may not substitute its interpretation of the evidence for that of the [Board]." *Burd v. Borough of Brentwood Zoning Hearing Bd.*, 298 A.3d 431, 440 (Pa. Cmwlth. 2023) (quoting *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005) (citation omitted)). Accordingly, "[i]t is irrelevant whether the record contains evidence to support

26

process inquiry, substantial evidence supports the Board's determination that [Ordinance 1974] does not promote the health, safety[,] and welfare of Township['s] residents.

Based on the foregoing, [this Court] find[s] no error or abuse of discretion in the Board's determination that [] Ordinance[ 1974] unjustifiably, arbitrarily, and unreasonably singled-out land for treatment different than similar surrounding land of the same character for the economic benefit of [ReMed]. As such, [] Ordinance[ 1974] constitute[s] spot zoning and, therefore, [is] invalid.

*Allen Distrib. v. W. Pennsboro Twp. Zoning Hearing Bd.*, 231 A.3d 90, 102 (Pa. Cmwlth. 2020) (citations and footnote omitted). Further, "[t]he [Board's] conclusion that [Ordinance 1974] constituted arbitrary spot zoning rests on the solid foundation of the substantial evidence in its findings of fact. Accordingly, the [Board] neither committed an error of law nor a manifest abuse of discretion in reaching its decision that the Property was spot zoned." *Conshohocken Borough*, 261 A.3d at 598.

In addition,

[t]o the extent [the Township] argues that the necessity of a credibility determination makes this issue debatable, [this Court] disagree[s]. It is in the Board's discretion to decide the weight afforded the evidence. If no weight was given to the evidence supporting the contrary conclusion, there can be no competing position to make the issue debatable.

*Allen Distrib.*, 231 A.3d at 102 n.8 (citation omitted). Accordingly, the trial court did not err by upholding the Board's conclusion that Ordinance 1974 is invalid.

---

findings other than those made by the fact[-]finder." *Burd*, 298 A.3d at 440 (quoting *Renaissance Real Est. Holdings, L.P. v. City of Phila. Zoning Bd. of Adjustment*, 199 A.3d 977, 983 (Pa. Cmwlth. 2018) (citation omitted)). Moreover, "[w]hen determining whether there is substantial evidence to support a finding, "[this Court] must view the evidence in the light most favorable to the party that prevailed before the fact[-]finder." *Id.*

**Conclusion**

Based on the foregoing, this Court affirms the trial court's order.


/s/ Anne E. Covey
_____
ANNE E. COVEY, Judge

Senior Judge Leadbetter dissents.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shaler Township, :
          Appellant :
           :
          v. :
           :
Zoning Hearing Board of Shaler :
Township, Patrick Murray, Allison : No. 1704 C.D. 2024
Murray, and Robert Neely :

### O R D E R

AND NOW, this 23rd day of December, 2025, the Allegheny County Common Pleas Court's November 13, 2024 order is affirmed.

/s/ Anne E. Covey
                 ANNE E. COVEY, Judge